

820 Massachusetts Avenue
Central Square
Cambridge, MA 02139-3296
Property Management: 617 876-4626
Fax: 617 876-4619
Resident Services: 617 661-6413

THE MERVYN D. DEMILLE
RESIDENCE AT THE
CAMBRIDGE FAMILY YMCA

October 14, 2003

ALL RESIDENTS
Central House
820 Massachusetts Avenue
Cambridge, MA 02139

**RE:   Restrooms**

Dear Residents:

Effective immediately, we recommend that you please do not use the restrooms or showers on floors other than your own. This building's renovation design (pursuant to restrooms and showers) accommodates the maximum number of residents per floor only. Anything in excess is problematic, both in terms of plumbing and general space per resident. Residents are intended to use restrooms and showers that are located on the resident's respective floors.

As a reminder, please remember to promptly report any maintenance related problems to the Management Office, especially when problems or concerns are noticed in common areas, including restrooms and showers.

Thank you for your courtesy and prompt attention to this important matter. Please do not hesitate to bring your questions or concerns regarding the above to the Management Office. We are always here to answer your questions.

Sincerely,

Leslie Chehade
Assistant Property Manager



**CAMBRIDGE FAMILY YMCA**

*We build strong kids, strong families, strong communities.*

Jeff Seifert
President

October 1, 2004

Dear YMCA Member:

During the month of September there have been an unusually high number of break-ins to lockers. I implore all members **not** to bring valuables with them into the locker rooms. Wallets, jewelry, and cell phones have been the targets of choice. The best defense against these thefts is to leave valuables home, but if you must bring valuables with you please leave them for safe keeping with the front desk. The second best defense is to know your neighbor. If you have any suspicions regarding folks in the locker rooms please immediately notify folks on duty at the front desk so that we may investigate.

We are sorry and disturbed by these events and hope that availing yourself of necessary precautions will reduce the number of these thefts.

Sincerely,

Jeff Seifert, President Cambridge Family YMCA

*820 Massachusetts Avenue, Cambridge, MA 02139-3296*
*Phone: 617 661-9622/Fax: 617 864-0996*
*www.cambridgeymca.org*

THIS AGENCY SUPPORTED BY





THE MERVYN D. DEMILLE
RESIDENCE AT THE
CAMBRIDGE FAMILY YMCA

820 Massachusetts Avenue
Central Square
Cambridge, MA 02139-3296
Property Management: 617 876-4626
Fax: 617 876-4619

November 22, 2004

All Residents
Central House
820 Massachusetts Avenue
Cambridge, MA 02139

Attention Residents:

Over the weekend, evidence of trespassers was found within the YMCA near the Durrell Hall theatre. The items that were found were of great concern to Central House management as well as the YMCA administration.

In the future, there will be an increased security presence in the overnight hours within the YMCA. If you trespass into the YMCA, you are not only breaking law, but you are also putting your housing in jeopardy. Please keep in mind that all passage ways from Central House to the YMCA are alarmed and can only be used in the case of an emergency. Using these exits and/or trespassing within the YMCA are a serious offense and will result in legal action being taken against you.

Please report any trespassing or suspicious activity directly to the Management Office. If you have any questions or concerns, please do not hesitate to contact me directly.

Sincerely,

Kevin Braga
Property Manager

There was a front desk attendant with a telephone handset at his ear last Friday October 08, who stopped me as I went to the resident's door to gain access to the upstairs, where the residents live.  "Come over here," the guy demanded of me.  Since I was not absolutely not sure the other ten people in the businesses of the front lobby just after seven o'clock, I asked, and repeated if the query was for me.  My day cross town and at the other side of the financial district was ended about five thirty, and I had walked back to Cambridge, after a meal near Inman Square, and this was the second trip into the lobby, because I had made a short run upstairs to retrieve something to take along with me to make a quick return trip to the store on Massachusetts Avenue.  "Just a minute," the guy demanded, "Weren't you the one I let into the [athletic facility] ?  Didn't I let you in and you go downstairs?"  What is this all about I am wondering.  "No, you didn't let me in the facility," I said, "what are you taking about?"  But the front desk staff was persistent in driving at something to stop me further from going upstairs.  He was checking me out for something.  "I let you in a couple of hours ago," he was saying.  But he could not be more incorrect.  "Didn't you, Didn't I let you in, you were  inside the athletic [facility] just a couple of hours ago."  "No," I continued, "What is this all about?"  The front desk person was still on the phone attempting to talk to me at the same time, and sort of let me pass and said I was free to go upstairs.  the kind of business that was on the phone seem not to be too demanding,  But I turned and came back and demanded more information from him, WHEN he got off the phone.  "What is this about?"  But he looking at his security screen, or panels, and was not able because of the other distractions of the front desk not able to elaborate.  "I thought I had let you go into the [athletic] area and you were in there just a couple of hours ago," he said, as I was standing under the two cameras at the edge of the service window.  "I could not have been me, as I just come in from a day outside," I informed him.  The YMCA front desk staff thought he had let me in past the front door to the gym for some reason, and I thing he was trying to say that he was calling me down for entry into the gym area.  I do not belong to any membership with the YMCA gym at this time, and his is mistaken about letting me in the access door to the entrance into the athletic facilities.

490 words

## Rates Estimate On Adding YMCA Wireless Services to the Internet

Find out who ISP is. What they provide. And to whom the ISP provides. Find rates charges for three companies, if we want to consider wireless services from fresh.

### Scenario

1. That the Y (building owner) wants to add a wireless Internet (IN) node to the administrative system for customer use at gym, athletics, AND for residents, or,

2. That the Y (building owner) wants to give to its property manager the ability to host an IN connection, separate from the YMCA business. The purpose of the property manager will be simply to augment other services (*I.e.*, cable, telephone, and intercom service) for resident usages.

If 2., then 20% of residents are potential for IN access by wireless.

If 1., then potential the number of computers for wireless services would come to perhaps 5% of their regular customer base (we do not know this figure, but only assume that a proportion of their customers would use laptops, PDAs or perhaps to use a print station at YMCA, provided their portables are wireless-ready with the necessary networking card).

### Addition of IN Access for Residents and Customers of the YMCA

That the IN service of wireless base for addition to the YMCA regular customer base so they may use their PDA (*e.g.*, palm pilot), their laptop or notebook to get IN directly from the roaming access (hotspot) inside the YMCA.

The YMCA Administration uses the DSL (Digital Subscriber Line) as its link to the IN
1.      How is the rate compared to providing a wireless access, from a cable or DSL?
2.      How does the rate compare to adding extra clients? # computers to add=10-25.

The YMCA property Management uses a DSL on a separate service?
1.      How will the ISP rate be affected by adding extra clients on wireless NODE?
2.      How will rate be affected with wireless NODE? # residents potential = 20.

### The above should be ranked on pricing structure with three popular companies. Monthly, yearly basis.

| Verizon | ATT | Comcast |

Thursday, September 30, 2004

# Landlord Verification

**Part I**

Name of Requester _____    Return the completed form by _____

**Part II**

Tenant's Name _____

Tenant's Address _____

City/Town _____ ZIP _____

Date tenant moved in _____

<div style="border:1px solid;">

**Part III**
**Authorization to Release Information**

I, _____
    (Print Tenant's Name)

give my permission to the requester to obtain and verify this information.

_____    _____
Tenant's Signature    Date

</div>

**Part IV (TO BE COMPLETED BY THE LANDLORD)**

**A. Rental Information**

1. To the best of my knowledge the following people are living there. (Please provide the number of persons in this household and, if possible, provide their names.)

_____

2. The total rent for this address is $ _____ per ☒ month ☐ week ☐ other _____ (specify)

3. Is the rental property public housing?   ☐ yes  ☒ no
4. Is the rent subsidized?  ☒ yes  ☐ no   If yes, is the subsidy  ☐ Section 8   ☐ Mass Rental Voucher Program?
   ☐ Other _____
5. If subsidized, subsidy payment $ _____   Tenant Payment $ _____

6. Is the tenant behind in rent?  ☐ yes  ☒ no   If yes, what is the amount owed? $ _____
   If yes, which months are owed? From _____ to _____

**B. Utility Information**

7. Does the tenant pay for any of the following SEPARATE from the rent?

☐ heat type: ☐ electric   ☐ gas   ☐ oil
☐ electric                 ☐ gas
☒ telephone                ☐ water   ☐ sewerage
☐ trash/garbage removal    ☐ other _____ (specify)

<div style="border:1px solid;">

**REQUESTER USE ONLY**

**What is the SUA?**

☐ Heating
☐ Nonheating
☐ Phone

</div>

**C. Landlord Information**

Please sign and date this form.

Landlord's Signature _____   Date _____
Landlord's Name (print) _____
Landlord's Address _____
Landlord's daytime telephone number (___) _____