|  |  |
|---|---|
| Jeffrey Taylor, *ProSe*<br>            Plaintiff<br><br>- *verses* -<br><br><br>Ally Fowler<br>            *Defendant,*<br><br>and Party of Ally Fowler,<br>            *Defendant* | CA-04-11802  EFH<br><br><br>**Affidavit and Misc. Filings**<br>**Subject Matter** |

Commonwealth of Massachusetts
County of Middlesex

---

Affidavit to clarify issues impacting on the services and activity of public agency Cambridge Housing Authority, and of Affidavit filings of Miscellaneous Documentation regarding the living arrangements in Cambridge, Massachusetts with respect to the Cambridge Family YMCA Affordable Housing Partnership, LP, related to defendant in capacity of the defendant and defendant's party to give and receive advisement and direction to and from management in operation of funds for housing subsidized by the housing agency authorized by McKinney Vento Act.

---

1. Plaintiff advances issues of the loss of privacy and loss of property values within the residence of Cambridge Family YMCA in unit #216, respecting management at the residence to influence whether Plaintiff is the subject of an investigation. Plaintiff recieves subsidy in the form of rental allowance in the absence of income and financing

which stipulations are not discovered in the homeless assistance plans under the aegis of public law Vento McKinney homeless asssitance. As well, there is something to the effect that stipulates that while plaintiff is not able to raise dollars to supply to the demand of the basic residence fee, there is a need of management to have access to the interior of plaintiff's residence at unit #216. Management has acted in it's own behalf, or on the behest of another un-identified agency, such that access to the premises in #216 is permitted and search conducted through the interior of this premises. That the unit of #216 is but one facet of PLAINTIFF's existence in the Commonwealth, it is an understatement that the premises on location at 820 Massachusetts Avenue, Cambridge, Massachusetts is the only such site of activity of search and seisure activities being observed by the PLAINTIFF.

2. Unknowns who have been permitted to have access to the plaintiff's residence at the Cambridge YMCA have also been at work invading the business domain of Plaintiff, and which Plaintiff has been attempting to finance and establish (name generated, Isthmus Oligo, of Cambridge). Evidence found in this activity has surface with the recent loss of notes and meeting Program with the seminar on thematic discussion of set-backs and roadblocks experienced by women in academic sciences (*Impediments to Change: Revisiting the Women in Science Question*, cosponsored by the

safe deposit keeping. The plaintiff has in his possession a set of keys to the deposit box. One key has remained in the box. Another key, out of the possession of the aware Plaintiff in the duration of the performance of colonoscopy, a mejdical procedure undertaken while at the New England Medical Center, has entrusted the keys to the presence of the surgical team while plaintiff was under aneasthesia. However, the keys were not left in trustworthy hands, as this is the only point at which plaintiff can surmise a loss of control of the phyiscal possession of the keys, and this has been done in the operating/procedures room, and not the lockers appended to the imaging suite. Plaintiff's only ring of keys was handled while the plaintiff had a medical procedure performed, while under anesthisia in the second floor, adjacent to the Beiwand building, in the gastroenterology imaging suite less than two years ago. Appareently whomever has such a motive to invade the contents of the security box has been motivated to follow Plaintiff's acitivities and to pursue the advantage of the medical team's procudure as well as to dupe the plaintiff and to copy the key carried on the keyring. Plaintiff, here, also notes that assets placed in limbo in the duration, are a mirror on the total access that plaintiff has been able to assert and maintain into the very secutiry box itself at the Cambridge Trust Company, to such degree that in the last three years Plaintiff has had access to the box himself in discontinuous periods. The Plaintiff

outlined in Massahcusetts General Laws against the taking of trade secrets, Chapter 93, Section 42A, that injuctive remedies are available for competing interests against the conversion of trade interests of a company, or of a person. Is there not a competitive interest involved in another where commandeering of resources in possession of an individual, such as the plaintiff, and is one of the chief activities of such a competitive and antogonistic interests? The activities of such a competing interst reminds the Plaintiff of the subject of a contemporary novel, in which a situation has been generated by one activity, a band of individuals who are in secret, and who are collectively engaged in obtaining the trust and confidence of a subject for the content of a project the troup is engaged in producing (book). The individual, of the plot of the book *The House of Russia*, has privacy compromised, but the story line portrays the lengthy secret log of the coterie absorbed in appropriating something they did not have. Plaintiff has been held hostage and incapable while such a process proceeds, without a goal in mind except to have what is not now in their possession. It is as though the process of taking from the Plaintiff is a drug, and the fiends who crave the substance of dispossession, are only satisfied upon Plainitff's loss of property, and what Plaintiff can claim as legitimate property right. Depriving the plaintiff of the power to act is a measure of the process in which Plaintiff's bank holdings

issues of complaints of fellow residents. Antonette LaRosa intones of infractions transpiring with other residents, and that actions are threatened on more input.

6. Item deposit, May 16, 2005 response of resident JLT to Antonette LaRosa and Kevin Braga regarding incident of citation of issues of light switching.

7. Item deposit, May 02, 2005 letter of JLT to another resident on #207 unit. The notice regards verbal abuse by the resident in unit #207, which reflects similar issue of another close resident using the language of hatred to address an attack.

8. Item deposit, Sales advertisement of Plaintiff. Dating is from period November - December 2004, prior to the sale of a desktop computer re-made by Plaintiff, a DP4000. On the bottom is written by another about sales of 80 stamps.

9. Item deposit, Sales advertisement of an antagonist to plaintiff, who has threatened action for marking the sign when Plaintiff removed the sign upon notice of building inspection. There is grafitto on bottom part, insinuation and aspirations heaped upon Plaintiff, allusion to products, or personal goods of plaintiff.

I, Jeffrey L. Taylor, state and depose for the purposes of this record the preceding content and