**UNITED STATES DISTRICT COURT**
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Jeffrey Taylor, *ProSe*<br>*Plaintiff* | CA04-11802-EFH |
| — verses — | **Affidavit and Misc. Filings**<br>05 July 2005<br>Updated status |
| Kevin Braga,<br>*Defendant,* |  |
| Michael Johnston,<br>*Defendant,* |  |
| S-C Management Corporation,<br>*Defendant,* |  |
| Cambridge Family YMCA<br>Affordable Housing LP,<br>*Defendant* |  |
| CEOC<br>*Defendant* |  |

Commonwealth of Massachusetts
County of Middlesex

---

Affidavit for submitting July 05, 2005 material relevant in action against property management company, and those responsible to the day to day operation of the facility, and party of property management company, for inadequately securing space which has been accorded to the residence of the Plaintiff under the terms of agreement with respect to the Cambridge Family YMCA Affordable Housing Limited Partnership. Ownership Cambridge Family YMCA, Inc., of Cambridge, is entrusted with funds from the government derived from several agencies to manage their residence site and facility for resident populations. These have been principally thru financing arrangements with a housing agency as authorized by the Stewart B. McKinney Vento Act and the Stewart B. McKinney Homeless Assistance Amendments Act of 1988 (and provisioned through amendments of the Housing and Community Development Act of 1992), unless more recent changes have been made effective.

---

1. PLAINTIFF resides in building at 820 Massachusetts Avenue, No. 216, Cambridge, Massachusetts 02139.

2. The location of cited actions of defendant and party of the defendant(s) is an address of 820 Massachusetts Avenue, Cambridge, Massachusetts 02139; the site of the principal activity in which the prime defendant(s) operate and manage a business to the general public places it in the jurisdiction of the district court.

3. Defendant Kevin Braga is employed at the residence facility as the Cambridge YMCA chief property management agent, and acts at the direction of the property owner(s), and by his employer, S-C Management Corporation of Brookline. The office on site oversees problems of the collective of the residents, *en toto*. The services attached to the property rentals include those such as drug interdiction and rehabilitation services, for example North Charles, Inc, the employer of Ally Fowler; custodial businesses, and security companies are other contracted/hired services which operate on the premises.

4. Defendant S-C Management Corporation, Inc., of 2 Brookline Place, Suite 206, Brookline, Massachusetts 02445 operates the Cambridge Family YMCA affordable housing (contractual arrangements), and also implements actions of the operating authority, on the premises at the location of 820 Massachusetts Avenue, Cambridge, Massachusetts 02139, for services with the residence of Central House. The security services, Plaintiff believes, are hired through this concern, and operate at the

discretion of the YMCA and property managers on location, though there is plenty of room for the security services to be a part of their own companys' agenda from time to time to pursue goals and directives here wherever this may lead.

5. Defendant non-profit: Within the ownership structure of the non-profit corporation of the Young Mens' Christian Association, Cambridge, Massachusetts, the operating agent of physical residence, and over-sight of site management is the organizational body of the Cambridge Family YMCA Affordable Housing Partnership, LP, established to administer the funding through a housing agency to provide residence at the Cambridge YMCA, Central House. Resident agent employed as representative for the association organization is Richard A. Foot, address 820 Massachusetts Avenue, also. Source funding for residence rental assistance is by arrangement with the Cambridge Housing Authority, 675 Massachusetts Avenue, Cambridge, MA  02139.

6. Cause of action stems from source errors of the Defendants and the Defendants' Party: for a failure of a duty owed to Plaintiff with respect to having a secure residence (both physical security, and an environment secure from the presence of health hazard), for neglecting to keep others who have been maintaining a nuisance about the plaintiff's person and abode, and PLAINTIFF's dwelling at the facilities, and neglecting the obligation to provide a residence with reasonable

protections to ensure a respectable degree of privacy, both in aspects of personal accommodations and accommodation for a reasonable expectation against invasions into residential privacy. One such aspect is having to fend against actions of Mr. Ally Fowler from about November 2003 to July 2004 in common area spaces within the residence, while management ignores defense efforts.

7. Actions of building's owners' agents have jeopardized the Plaintiff's security in ways the owners may perhaps not be aware, or, in some ways would be averse to know. June 01, 2005 plaintiff was briefly locked out of the room at #216.

8. The embodiment of the principals for housing assistance through housing agencies is to operate residential sites for those without resources to enable them to establish community resources in employment and resources for health care. Such statutes and body of laws provide residents housing, and with access to community resources (the McKinney—Vento Homeless Assistance Acts and amendments following) so that participants are enabled to move into financial and economic independence, for self-sufficient living in the larger community. Defendant M. Johnston is aware of a fee waiver, which subordinates have not recognized in effect. Apparently a communication between the Housing Authority and Kevin Braga has resulted in the issuing of a quit notice, based on the non-payment of rents (equivalent to $25, payable to the leasing agent, YMCA of

Cambridge). The letter of April 14, 2005 from the Housing Authority appraises Plaintiff's rent at $25, on nil$$ income.

9. Plaintiff has lost two power supplies in two of plaintiff's computers in span of three months. The most recent loss — on the primary computer — on June 08, 2005, was because of an erratic line current (the plaintiff does use surge protection equipment). The Plaintiff registered with the local police department the theft of a key to the computer's operation, but on days subsequent has not been able to amend the police report [phone extension not responding (617.465.3367, file no. 05-4593), in-person visit ineffectual] to effect the change.

10. In continuance to documenting causes of redress to harm of Plaintiff, AFFIDAVIT is filed with the following contents, with an update to PLAINTIFF's residence status. Plaintiff is in receipt June 20, 2005 of a 14-day notice to quit from the YMCA Central House. Attached is copy. The retaliatory move for eviction is suggested as a response to the issues of the environmental health in the residence, as well as aversive actions of residents who interact with Plaintiff. As to whether there are health issues and environment hazards in the proximity of the PLAINTIFF, it is suggested that those pressures applied to the plaintiff as a motive to complain and leave.

11. Without access to write and document a housing appeal, it perhaps is the desire of

the DEFENDANT and Defendant party that by evicting the PLAINTIFF a halt can be called on addressing the defendants' wrongs upon petition to the Courts. The destruction of the access to records and access to Plaintiff's own writing instrument, and records is in violation of Plaintiff's First Amendment rights to communication, and especially to redress grievances committed against the Plaintiff. Without the tools to communicate, and a residence in which to write, no defense could be mounted to assure a First Amendment right to petition for remedy.

12. On the 10 June 2005 the plaintiff has cleared a fee in question related to the demand of the rental agents for the Housing Authority. This has been the twenty-five dollar amount appended to the YMCA monthly grant. The Cambridge Housing Authority, Director of Leasing and Occupancy, Michael Johnston, verified by phone the waiver for this fee. None of the effort of the CEOC staff, nor Plaintiff, can achieve locating a hard copy of such a fee-based waiver. If the print form exists, no volunteer effort has availed to produce the form as of this date.

13. June 2005 communications of JLT to the Medical Records Service of the Brigham and Women's Hospital, 75 Francis Street, Boston, Massachusetts 02115, have been acknowledged in order to emplace changes in the medical records. Attached are six pages directed toward this effort. Medical services appear to be in place at the residence, but the

source is not completely ascertained. If it has been said that plaintiff can not move without a doctor's agreement, such an attachment has been in place.

14. The illustration of one of the changes that have been inserted into the realm of the residence of the plaintiff, from an incident April 13, 2005, might be because of medical services. The image filed earlier comes from that of a bottle jar lid, having a felt-tip mark. The jar containing the urine sample of questioned substance was the same nature of container, of a tomato sauce. Notes to the records services of the primary care physician group reflect that the urine specimen was not accepted for testing.

15. The CEOC has not interceded on the matter of a rental fee waiver. [The CEOC also employs resident in #300, YMCA, and is previously mentioned as a source of past antagonism to the Plaintiff (Res. of #300 may have been told by an S-C Management employee that Plaintiff has taken many of his signs).]

I, Jeffrey L. Taylor, state and depose for the purposes of this record the preceding content and under the penalties of perjury attest the truth and the accuracy, and for true copy of any material attached, of the provisions herein this 5th day July 2005.

_____
[ signature ]

_Jeffrey L. Taylor_
[ printed ]