**UNITED STATES DISTRICT COURT**

District of Massachusetts

|  |  |
|---|---|
| Jeffrey Taylor, *ProSe*<br>*Plaintiff* | )<br>)<br>)  Post CA—04-11802  EFH |
| _ *verses* _ | )<br>) |
| Michael Johnston, Dir.<br>*Defendant* | )  **AFFIDAVIT**<br>)  21 February 2006<br>)<br>) |
| Leased Housing & Occupancy,<br>CAMBRIDGE Housing Authority<br>*Defendant* | )<br>)<br>) |
| Cambridge Housing Authority<br>*Defendant* | )<br>)<br>) |

Commonwealth of Massachusetts
County of Middlesex

1.   PLAINTIFF resides in building at 820
Massachusetts Avenue, No. 216, Cambridge,
Massachusetts 02139, the location subject to the
party of the defendant, who controls leased housing
under government subsidy program, USDHUD, to the
Cambridge YMCA.  Although procedural docketing
requires a minimuum of four copies of any bill of
complaint or issue, today, a single copy will have to
suffice.  Until Plaintiff has resolved printing and

supply problems, a single copy has been available for recordation of housing issue, mindful w.r.t. criminal activity.

2. Pursuant to QHWRA, of 1998, Section 507a, this civil action addresses environment of residential conditions which the Cambridge Housing Authority sponsors, for which funds are administered through the Housing and Urban Development block grants. Cambridge, Massachusetts is the location of the jurisdiction relevant to the District Court, because prime defendants oversee the contracts, individually to agency-member groups such as the Cambridge Family YMCA Affordable Housing, LLP, and to the tenants, and residents therein. A small claims action has addressed

The residence facility is the Cambridge YMCA, to which utilizes housing agency funds, and which acts at the direction of the property owner(s), and by the employer, S-C Management Corporation of Brookline. S-C Management Corporation, Inc., of 2 Brookline Place, Suite 206, Brookline, Massahcusetts 02445 implements the Cambridge Family YMCA Affordable Housing, LLP., a CHA administered account. The location of 820 Massachusetts Avenue, Cambridge, Massachusetts 02139, is otherwise known as Central

House and serves as CHA-member vehicle for low-income
tenants.

## The facts pertinent to the present dispute:

1. The January 07, 2006 complaint has been filed with a request for waiver of
Massachusetts's court expenses, and for waiver of testimony expenses of expert who
makes an analysis of MS Win98 problem on a compromised computer. The complaint is a
claim for monies taken not in accordance with the intent of the Quality Housing and Work
Responsibility Act of 1998. Also, defendant creates conditions that are reliant upon
PLAINTIFF's ignorance of housing law. Pursuant to adjudication of monies taken
improperly, through QHWRA, some payments made to cover the housing agency demands
are sought for reimbursement. Attached are tendered statements for claims; and an
amended police report.

2. In early February plaintiff contacted a Massachusetts court clerk handling the small
claims filed in January. One assistant to Robert Moscow, Maria De Marco, has been
unable to enter her computer to answer questions. Over the telephone, she claimed that
the court computer system was down, and not responsive, in order for her to refer to the
claims, recorded [with a Jan 17'06 frank]. Maria De Marco asked for plaintiff's telephone
number, which Plaintiff provided. The Communication sent to the clerk's office priority mail
03041560000221906775 has been acknowledged as received. For this affidavit there are
three attachments: "Sample Communications, CHA Related" "JLT letter of January 07,
2006 to Clerk of the Court" and the "JLT statement of claims of January 30, 2006" which
summarizes small claims, for which fee waiver has been requested.

3. In the third week of February 2006, Plaintiff has sustained a neighbor's critical attack,
which has relied on personal information about the Plaintiff, not supplied to the attacker.
The quality of the information means that unless personal information has been
volunteered, the only means in which this personal information has been obtained is by
applied effort at other resources not directly connected with Plaintiff. One, it was said
"you've been the same way for fifteen" years, and secondly, in the same personal berating,
"you're a paranoid muther," has been uttered. The education level of person expressing
opinion of quality or state of mental being is insufficient to construe such criticism. He has

been trained. The length of time exceeds the established period with which person has been acquainted with Plaintiff. The quality of the two examples is the ploy of someone in the employment of another who wants to exert a knowledgeable influence pertinent to Plaintiff, or his business. This same person (the employment) plaintiff strongly believes also has had arranged for the braided black belt, discussed elsewhere, to fall into the possession of another, years ago. This same person and entity, not identified, has been making a project of plaintiff's progress, business or personal, for those "fifteen" years referred to in the utterance, plaintiff believes. Personal gain is at stake. The next door neighbor is really no different than any other of the dozen or so private security guards occupying the same residence, except clothing is not standard (no uniform), nor probably #217's affiliation. More than likely, the other opposing resident, in #215, has been the housing authority resident spotter trained in such a way to detect interactions in the community affairs (these are the landlord's equivalent of persons acting in the role of consumer shopper). Up until the December 31, 2005 attack to ruin the DVD-ROM purchase, not an hour back from the store, there has not been too much evidentiary material to link, undeniably, a physical presence in the room. The disappearance of January 16-17 draft proposals of the Free Software Foundation's licensing agreements, in the 2006 version three, follows the pattern of disappearances with food and vegetables that are left inside unpacked immediately after a return from the pantries, and only different in the sense that those items are a loss without the attendant residual effects of a physical presence in the living spaces. The person that links the residence of the Plaintiff to the twin neighbors on either side of Plaintiff's residence, most likely is responsible for the pollution in every employment setting as well, like the volunteer meal program settings with various church run groups. The plaintiff has tracked identical problems in the work sites, and with other affiliation, while it has been possible to maintain an interest to an employer. The real estate sector, and housing agencies, are generally the topmost creators for the way in which neighborhoods are made-up, which means the social environment of people are brought together to decidedly share a portion of geopolitical spaces apportioned to any residential life. The pattern in this, plaintiff points out, is a grouping absent women and children. [When the plaintiff used the stairwell to exit the 101 Arch Street employment in the upper floors, in Boston, June 2000, the building security detained plaintiff for exiting through the stairwell, and within a 15 minute period, while Boston Police were dispatched to the scene with a witness from a lunch site an hour prior to identify plaintiff, and, to issue no trespass instructions. SSI (Scolly Square Incorporated, Malden) Official, one "Gerald"

working at the building was sure to address a thought or two about finding a laptop, or other portable computer, in the sports utility carrier (while Boston Police Department had been summoned Johnny-on-the-spot).]

4. The activity of inspectors, or any other "authorized" persons, who enter the plaintiff's room, appears to work on the demand of agency sometimes for the acquisition of property, paper, or taking images and sometimes leaving damaged containers, and tainting food. These entries by no authorized known person/s have transpired on an ongoing style, and average as numerous as three and four times a week, plaintiff believes. On work sites, the backpack, or sport utility bag, is the item targeted. Those who are not within the rights granted by the house manager and Plaintiff, have access, and it appears no different than trusted relationships within the residence are on the inside of the Plaintiff's rooms for the purpose of surveillance activity. The access is made possible by a duplicate key only. The trusted parties have excluded the basis of contract living spaces by excluding consent of Plaintiff. Plaintiff does not have minimum privacy in which to engage in employment, or operate business, in order to function as a member of larger society [violating the spirit of the QHWRA98]. Where Plaintiff has alluded to privacy in the prior discussions (CA04—11802), it has not been discussed as the express violation limited to outside voyeurism, as L. Brandeis (1894) has discussed with the advent of portable photography, but more to the point, refers to what Lord Camden has signaled as problematic as loss of papers, and especially to those determined to undermine the existence of a subject's rectitude and community relationships. To the plaintiff it is that the activities of others are interfering with rights of use and enjoyment of residence (employment would count as time, but since September 11, 2001, plaintiff has not been with a employer). Regular incidents are transpiring within the living spaces in use by Plaintiff, though PLAINTIFF is not knowledgeable enough to describe a single other resident in leased housing (with an exception of Pat in #206 who has a new computer malfunctioning, and Alex formerly of #410 who has been compromised with serious health disability). Cf report 05-11190 CAMB Police Department [ATTACHMENT: Incident Report #0511190].

5. The computer with the CD-RW/DVD-ROM newly installed is currently nonfunctional. Plaintiff believes person/s who are monitoring activity of computer, and content, may have damaged the unit in ways that are intentional. This same intent is such that in an identical way an RTF file has been altered on the same computer. This text file has been altered to

remove reference citations plaintiff has written, especially on the second and following search operations. Ultimately, the file has had all instances to the [G. Dougherty] name, and any index to him, removed. Furthermore, when an MS WordPad file has been searched, no key has been found: meaning the <control-F> function has been revised in such a way not to produce search results, or so they will not display, when the search string is run. Plaintiff has run the SFC quality reassurance program in response to this. As of February 2006, the operating system, for which Plaintiff owns the Win98 CD-ROM, is not found. Additional DOS information points to say the OS may have been deleted. The drive C: may be found, but the prompt, C:\> provides no functionality. The computer says the system, and the content of the drive, is not recognized. ScanDisk will not start. Scan register program is also not operative.

**6.** On February 17, 2006 plaintiff addressed the Cambridge Housing Authority to questions of interim re-certification with a personal visit. The rep that has the responsibility for the housing lease where Plaintiff lives, John Cassama, said in the late afternoon that the questions are to be referred to the director of Leasing and Occupancy, Michael Johnston. It was also said twice that he forgot to present a notice for plaintiff of the timing of the event for income verification, which is essentially the business of an "interim recert" performed at three or four month intervals.


```
I, Jeffrey L. Taylor, state and depose for the purposes of
the record the preceding content and under the penalties of
purjury attest the truth and the accuracy, and for true copy
of any material attached, of the provisions herein 21st
February 2006.  We are permitted a single copy to work with,
until circumstances dictate otherwise.
```

_____
[ signature ]

_____
[ printed ]



CAMBRIDGE POLICE DEPARTMENT
*CAMBRIDGE, MA*
# Incident Report #5011190

---

Case Title
**B&E / MALICIOUS DESTRUCTI**
Date/Time Reported
**12/31/2005 15:05:00**
Incident Type/Offense
**1.) B&E FOR MISDEMEANOR c266 S16A**
**2.) DESTRUCTION OF PROPERTY -$250, MALICIOUS c266 S127**
Reporting Officer
**LEE,DAVID (473)**

Location
**820 MASS AVE 216**
Date/Time Occurred
**12/31/2005 11:05:00 to 12/31/2005 11:10:00**

Approving Officer
**SABBEY,GEORGE (457)**

---

## Persons

| Role | Name | Sex | Race | Age | DOB | Home Phone | Address |
|------|------|-----|------|-----|-----|------------|---------|
| **VICTIM** | **TAYLOR, JEFF** | **MALE** | **WHITE** | **55** | **12/08/1950** | **617-876-2858** | **820 MASSACHUSETTS AVE CAMBRIDGE, MA** |

---

## Offenders

| Status | Name | Sex | Race | Age | DOB | Home Phone | Address |
|--------|------|-----|------|-----|-----|------------|---------|
| **SUSPECT** | **UNKNOWN,** | | | | | | **,** |

---

## Vehicles

---

## Property

| Class | Description | Make | Model | Serial # | Value |
|-------|-------------|------|-------|----------|-------|
| | **FRONT DOOR ENRTY NO DAMAGE** | | | | |
| **MISCELLANEOUS** | **SAMSUNG CD-ROM** | | | | |

---

## Narrative

The resident of 820 Mass Ave room #216 reports that an unknown person(s) entered his locked room sometime between 11:05 and 11:10 a.m. and punctured a hole in a Samsung CD-Rom. There is no sign of forced entry and nothing else in the room appears to be missing or damaged. This CD-Rom has the software and drivers needed to install a new Samsung CDRW/DVD drive valued at $25.96.

CONTENT OF CD : ©1994-2005 AHEAD Software AG, and ©1945-2005 Cyberlink applications Suite and DVD player application SW. It also contains two library driver extensions

Imprint of the tool on CD-RoM sleeve : there are two raised edges, one thousand micrometers (± 100µm) in length. The pattern conforms to the surface features of one corner on a butter knife inside plaintiff's living space. One of the marks perhaps if from a trial strike. In impression of mold: cast, the resultant crater 1.5 x 3.00 mm (± 100µM) fits the surface contour of knife butt of handle. The impact left a fracture over 4 cm² in the CD-RoM

Sample Communications: CHA Related

October 11, 2001, complaint from S-C Management Corporation, AMO, Central House, 820 Massachusetts Avenue,  " ... to the within named to quit and deliver up and to vacate as within directed."  Brouillard,  balance as of   10-11 = $566.00

December 9, 2002, complaint from S-C Management Corporation, AMO, Central House, 820 Massachusetts Avenue,  " ... to the within named to quit and deliver up and to vacate as within directed."  Brouillard,  12-9 balance = $25.00

February 7, 2003, complaint from S-C Management Corporation, AMO, Central House, 820 Massachusetts Avenue,  " ... to the within named to quit and deliver up and to vacate as within directed."  Brouillard,   balance as of 02-07 = $25.00

July 14, 2005, complaint from S-C Management Corporation, AMO, Central House, 820 Massachusetts Avenue,  " ... to the within named to quit and deliver up and to vacate as within directed."  Braga,   balance as of 07-14 = $50.00

Item:

Draft Letter of JLT to CHA:

"Please accept the enclosed seventeen certification forms for purposes of annual renewal of residence assistance. "Some agency and office functions require mail submission, and will not accept materials for consideration that do not arrive by third party delivery methods.

"In the total absence of income from employers during the fiscal (November 2002—November 2003) I do not have the required postage to act in timely and effective manner to meet Cambridge Housing Authority scheduled time for completion of recertification, in this year.

"From the standpoint of legal disability of services from any employer, diverse employments, the material submitted for review may not be complete, as communications expenses have been beyond the means to accomplish these goals."  – submitted for review 12 November 2003 (CHA letter 10/21/03, for appointment November 11, 2003, which CHA rep failed to show)

Item:

Draft Letter of JLT 2001:
"PO Box 391701, Cambridge, MA  02139
"May 15, 2001
"Mr. John Cassama
"Cambridge Housing Authority
"19 Prospect Street
"Cambridge, MA  02139
'The calculations you have worked with this year, up to the point in late March were not based on actual income figures. Instead, upon formula derived on an earning projection.
"The enclosed information on payments I have received from employment show the last week for which I was payed [sic] for work and the most recent income period.
"Incidentally, the past pay period was in December 2000, where there are checks Jan 03, 2001, and December 28, 2000.  The next pay period has check dated for May 05, 2001.
"Jeff Taylor"

Item:

Letter of JLT to Brouillard April 27, 2001, for attached $25 payment.

Isthmus Oligo
820 Mass Ave, No. 216
Cambridge, MA 02139
617.918.7873 v-mail

January 30, 2006

Cambridge Housing Authority
675 Massachusetts Avenue, 2nd fl.
Cambridge, MA 02139
617.864.3020

Plaintiff's claim: The defendant owes $375.00 plus $j ☐ court costs for the following reasons: Give the date of the event that is the basis for your claim.

There are four events: these are posted separately. Each describes a housing action, based on contract abrogation.

The defendant has assessed monies, where there should be status exemption; Plaintiff seeks $375, plus $75 for CHA error contract certifications.

Pursuant to suggestion, effective date Oct 21,'98, that effort be made to re-imburse tenants overcharged for minimum rent, Plaintiff claims these funds were improperly taken, AND move for judgment [Fed. Reg., vol. 64, No. 32, February 18, 1999.

Sign Date: JAN 07, 2006

Very truly

Jeff Taylor

Jan 09, 2006

Clerk & the Court
District court, Civ Div
40 Thorndike St, 15th Fl
Cambridge, MA 02141

Clerk =

This page is copy —
CONFORMED copy —
of printed document

2006 FEB 12 P 12:36

DISTRICT OF MASS

There are four events; see attached sheet.

Each describe housing action, based on contract abrogation.

The defendant has assessed monies, where there should exist an _exception_ (hardship).

Plaintiff seeks $375.00 plus $75.00 for CHA error of _contract certification_ process.

Pursuant to suggestion, effectively Oct. 21, '98, that effort be made to reimburse tenants overcharged for _minimum rent_, Plaintiff claims these funds were improperly taken, and moves for judgment (Fed. Reg., Vol. 64, No. 32, Feb. 18, 1999).

1. October 11, 2001, complaint to quit and deliver-up. balance = $566.00

2. December 09, 2002. s-c manage quit and deliver, balance = $25.00

3. February 07, 2003. s-c quit & deliver  balance as of 02-07 = $25.00

4. July 14, 2005. s-c — quit & deliver proxy intent = "This notice is from a debt-collector, " and any information we get ... " — quincy law firm =     balance as of July 2005 = $50.00
                                                       Sept 2005 = $75.00