# United States District Court

### District of Massachusetts

FILED
IN'S OFFICE

ZID 205 -9  P 1 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| Jeffrey Taylor,<br>*Plaintiff* | ) | |
| | ) | Post CA—04-11802 EFH |
| - verses - | ) | |
| Central House, YMCA,<br>Residence, and CHA-member,<br>Defendant | ) | **AFFIDAVIT** — Document<br>09 AUGUST 2006 |
| S-C Management Corp.,<br>Defendant | ) | |
| Central House, Officer<br>Defendant | ) | |
| J. Doe, Entity Unknown(s),<br>Defendant | ) | |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Notes from the medical journal. The report is a digest of a print from the medical records of Plaintiff, and tests have been dated to the first month of year 2005. The heamatology and toxicology have been referenced in prior documents. Cholesterol has exceptionally good parametrics.

I, Jeffrey Taylor, state and depose, under the pain of perjury, the accuracy of conformed copy herein, 09 August 2006.   .

Jeff Taylor   _ ; ˉ

```
-----------------------------------COMPLETE BLOOD COUNT-------------------------------------
          WBC      RBC       HGB       HCT     MCV      MCH      MCHC      RDW       PLT
          4-10    4.5-6.4  13.5-18.0  40-54   80-95    27-32    32-36    10-14.5   150-4
          K/uL    M/uL      g/dL       %      um3      uug      g/dL               K/uL

01/25/05 6.48    5.11      15.2      42.8     83.7     29.7     35.5      12.9      195
  1:25P
-------------------------------------AUTOMATED DIFFERENTIAL-----------------------------------
         LYMP %   MONO %    NEUT %    EOS %   BASO %   LYMP #   MONO #    NEUT #    EOS #
         18-41   2.5-8.5   48-76      0-5     0-1.5   0.8-4.1  .10-0.8   1.9-7.6   0-0.5
                                                       K/uL     K/uL     K/uL      K/uL

01/25/05 34.4    7.3       54.5      2.9      0.9      2.22     0.47      3.53      0.19
  1:25P
----------------------------------AUTOMATED DIFFERENTIAL-------------------------------------
         BASO #
         0.00-0.15
         K/uL

01/25/05 0.06
  1:25P
--------------------------------BASIC COAGULATION / DIC SCREEN-------------------------------
         PT       PTT      BLEED TIM THROMB T FIBRINOGE  FSP/D-  PT(INR)  ANTI Xa L
       11.8-14.6 23.8-36.6   2-9     15-20    200-450   0-0.5   0.9-1.1
         sec      sec       min       sec     mg/dL     ug/mL              U/mL

01/25/05 13.2    29.4                                            1.0
  1:25P
```

```
Print
-----------------------------------RENAL & GLUCOSE-----------------------------------------
         GLUCOSE  UREA N   CREATINI   eGFR    SODIUM   POTASSIUM CHLORIDE TOTAL CO2 ANION
         54-118   9-25     0.7-1.3           136-142   3.5-5.0   98-108    23-32     3-15
         mg/dL    mg/dL    ng/dL            mmol/L    mmol/L    mmol/L    mmol/L    mmol/

01/25/05 87      14        1.0               142      3.9       107       30        5
  1:25P
-----------------------------------ENZYMES & BILIRUBIN-------------------------------------
         ALT/GPT  AST/GOT  ALK PHOS  TOT BILI
         7-52     9-30     36-118    0.2-1.2
         U/L      U/L      U/L       mg/dL

01/25/05 27      29        73        0.5
  1:25P
-----------------------------------CHEMISTRY----------------------------------------------
         TOT PROT ALBUMIN  GLOBULIN  CALCIUM  IOCA     IOMG     PHOSPHATE MAGNESIUM URIC AC
         6.0-8.0  3.7-5.4  2.0-4.0  8.8-10.5  1.13-1.32 0.53-0.67 2.4-5.0  1.8-2.5  2.7-7.
         g/dL     g/dL     g/dL      mg/dL    mmol/L    mmol/L   mg/dL     mg/dL    mg/dL

01/25/05 7.1     4.6       2.5       9.3
  1:25P
-----------------------------------LIPIDS-------------------------------------------------
         CHOLESTER TRIGLYCER HDL      CLDL     DLDL      VLDL    LIPOPROTE
         140-199  35-150    40-60    50-129   50-129
         mg/dL    mg/dL     mg/dL    mg/dL    mg/dL     mg/dL    mg/dL

01/25/05 112*    85        40        55                 17
  1:25P
-----------------------------------ENDOCRINE/HYPERTENSION----------------------------------
         TSH
         0.5-5.0
         mIU/L
```

01/25/05 0 827

# United States District Court

## District of Massachusetts

FILED
CLERKS OFFICE

2006 AUG -9 P 12 37

DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| Jeffrey Taylor, <br> *Plaintiff* | ) <br> ) <br> ) <br> ) |
|  | ) <br> )   Post CA—04-11802 EFH |
| - verses - | ) <br> ) <br> ) |
| Central House, YMCA, <br> Residence, and CHA-member, <br> Defendant | ) <br> ) <br> )   **AFFIDAVIT** — Document <br> ) |
| S-C Management Corp., <br> Defendant | )   09 AUGUST 2006 <br> ) <br> ) |
| Central House, Officer <br> Defendant | ) <br> ) <br> ) <br> ) |
| J. Doe, Entity Unknown(s), <br> Defendant | ) <br> ) <br> ) |

Commonwealth of Massachusetts
County of Middlesex

---

Documentation. Experience of Plaintiff. This is a notation about the tactics of unknowns who are interfering with the use and enjoyment of the facilities where Plaintiff has resided. It is unknown at this time why Plaintiff has been called another name by attorney who works on housing support. At the present time, this factor may be factor in the delivery of services from the public support agency.

I, Jeffrey Taylor, state and depose, under the pain of perjury, the accuracy of attachment with details herein, 09 August 2006.

Jeff Taylor

On the 24th July 2006, Plaint:ff reviews message from Susan Hegel of the
Cambridge Somerville Legal Services, supervising attorney, for the initial
consultation with Michael Weiss (then a student, or interning with the service
organization). Her message with a time stamp of 8:00 p.m., was made on a day
of the prior week on the community voice mail assigned to Plaintiff.  She
mentioned that, among other things, as a renter with the S-C Management and the
Young Men's Christian Associetion, in Cambridge, Plaintiff should seriously
consider moving, leaving the YMCA, because here, there would be a problem of
paying the rent, and paying cn a schedule suiting the housing authority.  The
reason decisions have been made up this way is because Ms. Hegel has been in
business contact with attorneys representing the residence providers.  She
understands community unrest, where it involves the peace and enjoyment of the
YMCA where the Plaintiff is placed in residence, alongside other types who have
made it impossible to function, on a paying schedule.  Miss Susan Hegel began
the voice mail message, "Hi, John."  In the next sentence she changes, and
corrects the voice mail message introduction.  The content also is suggestive
that there is no potential for employment, while living at the YMCA, under the
supervision of residence staff.  On the 28 July 2006, a move by the Medical
Assistance, also known as MassHealth, has been instituted.  There apparently is
a claim that a renewal is not sought, and MassHealth has been discontinued,
stopped at a time while there is medical crisis on hand.  Those who have been
in association with the access to the apartment have left traces that parasitic
infection be instigated.  Inspection from residence, on July 26, 2006, has
meant that unknown/select residents have been targeted for review.  This
presupposes a random pattern of selection.


Plaintiff has returned after 7:00 p.m., on the 08 August 2006 from a walk from
the 11th World Congress of the Drug Discovery Technology and Development on the
other side of Boston.  Of the promotional materials the General Dynamics
company Viz has offered to the attendees of the conference is a bouncing ball
with their logo, and trade ma:k.  The superball has a shock-activated LED pulse
display in the center.  Plaintiff went from the residence several times for
errands at the store, and upon unpacking the conference materials has
discovered the theft of the superball which was among the contents of the
conference shopping bag.  Although in 2006, the resident of #215 has not been
apparently so fixated on the activities of Plaintiff, his room is next door to
the Plaintiff's.  On Friday evening, the door handle has been actuated twice on
May 12.  How does Plaintiff infer that the resident next door has turned the
lever-handle?  Plaintiff has heard the door handle moving, and visually
processed the activity of one outside of the room.  It is by reason that on the
outside of the door a person has passed through the hallway, and checked the
residence door on unit #216, and in the next five seconds the sound of the door
closing to the residence on unit #215 has registered.  And since Plaintiff was
aware that #215 resident has keen on the floor that day, it is sufficiently to
deduce with more than a confidence level of 95 percent that Plaintiff's door on
May 12, 2006 has been jostled by #215.  The long history of things that
disappear from Plaintiff's rocm, upon Plaintiff bringing food, reading
materials, laundry, etc., is another incident of plaintiff's loss of the
enjoyment of the premises and being deprived of material goods due to the
activity of a closest neighbor.  The sneak thief, and molester, who claims
prerogative to disturb the Plaintiff' privacy, and make nuisance.  The access
permitted to this individual, while the Plaintiff's is closed and locked, has
not sufficiently been in check to prevent this person/group of persons acting
in the criminal relation to the Plaintiff.  In the prior weeks, the plaintiff
has been saddled with public health threat of infestation of biting bed bugs,

and having the extra work of cleaning house and home against the pests, which Plaintiff claims have been introduced into the Plaintiff's room, and Plaintiff also claims that the person and group of person's responsible for the repeated invasion of Plaintiff's privacy is one and the same as those who are stealing the Plaintiff's material goods and paperwork. The annoyance is a step beyond the simple taking of things irreplaceable. Last week's extra load of washes included the loss of two individual items of socks, clothing for the feet, where plaintiff has also had bites from parasitic insects. A message left by the apparent thief has also been planted on the dark single sock, taken and then returned. The hair is approximately 12 inches in length, thin, and is a blonde, or very light brown hair, with a hint of silver, or portions that are colorless. Though the hair has been affixed to the dark sock, the other colored sock also has a cross-lattice pattern — a diamond field — this sock has been placed back into the Plaintiff's drawer for used items, i.e., the dirty laundry where such items are stored until wash. Plaintiff argues that this operandi would mark Police activity. Motives which are done in secret, though secrets such as this may as well, and just as likely be a social thing too, are special to the operations of police activity, and not public safety. The tone of their deliverance is one of severe annoyance while at the same time being extremely nuisance and criminal. The feebs and lack-lusters on residence floor where the Plaintiff has a room, are not sufficiently endowed to even operate the computers in the Plaintiff's room. The social aspect of the invasion of the Plaintiff's room and the Plaintiff's privacy, means that perhaps it is such a shared event that more than just the residents are involved. Plaintiff senses teasing, and the calling of the cherry-innocence among the tormentors, who have also caused similar disturbances in working environments the Plaintiff has had association. Plaintiff does not believe a good Samaritan is not to be found among the resident's pool of suspects, who live so close to the Plaintiff that it is only ten, perhaps fifteen seconds, away from leaving their hiding place, to unlocking the Plaintiff's door to wreak the mischief caused. In the span of time it takes the Plaintiff to go a hundred feet up the hallway and into the restroom to wash or use the toilet, two perhaps three have made the regular habit of unlocking the cross-bolt door lock and doing harm to the plaintiff. Harm, and covering up perhaps by intimidating those neighbors who would report criminal activities, like the intimidation Plaintiff experiences when the instrument Plaintiff uses for writing is threatened with destruction. Intimidation Plaintiff experiences on loss of records, and the disturbances of having to work without records and paper. The thief, or coterie of maladjusted individual, who exist to keep the Plaintiff disorganized, are real problems; the material not found in the Plaintiff's computer are the notes, for one instance, of the trial of Amgen, 97CV-10814. The plaintiff has partially recorded some events and notes of the trial process on this case, in court, on a half-a-dozen occasions attended in the Moakley Courthouse. Before the Plaintiff's computer was secured in a BIOS update for the emplacement of a log-in screen, this file has been removed from the computer (though the tampering with computer files has not been limited thusly). This activity is not from the same person material taking things inside the locked room, but this individual is among the same set of persons, persons unknown, who are discriminating against the plaintiff in decidedly criminal ways. One report of activity on the nuisance activity about the plaintiff's door has been is the only one plaintiff is aware of, and this is when former resident of #209 January 01, 2006 said to the Cambridge City Police taking a report of trespass in the Plaintiff's room. Scotty has said that earlier in the morning, #215 John was on the floor at the plaintiff's door, outside of course. Plaintiff is not aware of another instance of a complaint, but has invited others to share.

# United States District Court
## District of Massachusetts

FILED
IN CLERK'S OFFICE

2006 AUG -9  P 4: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

Jeffrey Taylor,
*Plaintiff*

- verses -

Central House, YMCA,
Residence, and CHA-member,
Defendant

S-C Management Corp.,
Defendant

Central House, Officer
Defendant

J. Doe, Entity Unknown(s),
Defendant

Post CA—04-11802 EFH

**AFFIDAVIT** — Document

09 AUGUST 2006

Commonwealth of Massachusetts
County of Middlesex

Documentation. Experience of Plaintiff 14 and 15 July 2006. These are some notes from general interactions with fellow residents with the CHA-member housing, YMCA. On April 26, of this year, Plaintiff has lost V-neck dress sweater, wool, dark green. This item of clothing has been lost to unknowns. Clothing from the room is also missing from events prior to a wash day on the 15 July 2006 (Saturday).

I, Jeffrey Taylor, state and depose, under the pain of perjury, the accuracy of attached observations herein, 09 August 2006.  .

Jeff Taylor


On the 14 July 2006 the Plaintiff's choice this period for performing the routine of a chore doing a load, a single bag, of laundry at the fourth floor's resident laundry room. The activity is directly followed by a short trip up Massachusetts Avenue to the commercial laundromat to complete a single cycle of drying. This habit is an acquired activity, one because of expenses, and two the desire to do as little as possible with the inhabitants of the residence. The necessity for this routine has been made possible by those who have taken a stance of interacting with the Plaintiff in ways to cause distress. Saturday morning, the 15 July, sometime after 11:45 a.m., is the close-off time which completed the chore of a single load of wash and dry, and the time in which plaintiff had resumed the normal schedule for any Saturday of the month. The time on the fourteenth selected for washing had started before 8:00 AM. Clothes for non-white load had been sorted and bagged ready to insert into the machines upstairs. The first trip to the laundry room turned out to be one where other users were present, and the only machine to wash with front load utility had been occupied, with 38 minutes on the LED display, meaning in less than a minute before the plaintiff has arrived, the front-loading machine has been occupied. So for the next 45 minutes the wait was in the room with other chores, on a Friday morning. Another trip to the fourth floor, again with full laundry bag, and containers for soap bleach and fluff, the Plaintiff has shown in the room and the dryers were now in operation. The Friday morning bunch crowd has taken hold, as the two top loaders, and another load has been started at 36 minutes left to finish in the front-loader, which is preferred by Plaintiff. Another hot July day is in store. The Plaintiff views into the central shaft of the building through the windows at the laundry room annexed to the core of ventilation and HVAC channels. At the apex of the atrium/shaft is a fan, which appears to be a exit ventilator for the huge volume of air internal to the building. The belt for the industrial sized exhaust fan, where it is powered by an electric motor, is not in place. The exhaust fan is something that would adequately control of the output of the two-or-three working resident dryers on the resident floor (there are another bundle of laundry room utilities in the housekeeping room). As it is, the fan blades are not moving, when, under the vault of the green-house-like covering in the building there in the central part, it seems that exhaust would help control the air flow within the rest of the building. The fan in the upper most reaches of the building ventilation is completely non-functional on a summer day's activity. Nonethe-less, Plaintiff has had to twice decline an exercise with the laundry room available on the fourth floor. In fact, a third visit to the fourth floor an hour later, the front-loader was occupied with another sequence of laundry. It is after eleven in the morning and no laundry is possible at this time, as priority in other activities are on call.

The following day, again starting in the morning, finds the laundry room completely occupied, and a second visit to the room with a single bag of darks has been started. The two or three dryers which are functional in the resident's use, are full, with piles more lingering on the tabletops. The choice of the Plaintiff is thus to finish his laundry, and pack everything up and move it to the commercial site down the street. There was a woman at the table next to where the Plaintiff has folded the clothes. At the conclusion of the drying cycle, Plaintiff packs up there, and moves all clothes to the home room. Plaintiff is missing two socks. One each from two pair of diagonal cross patterned style. In the room, the Plaintiff has checked everything in and has no clue as to the whereabout of the colored socks, one, a olive-slate dress, the other a flesh-color brown-to-tan. Both have the argyle lattice. The woman-smoker who sat at the table next to the back-pack is not a suspect to the theft of the socks. Plaintiff maintained sight-and physical control over the backpack fro the exterior of the laundromat from across the street. The very attractive smoker woman was on the outside the first five minutes of the twenty minutes plaintiff was at the laundry. Both socks were absent in the drawer upon refreshing the drawers, both where they should have come from, and where they were installed once they were clean.

Plaintiff calls upon reasoning to establish whereabouts. The dirty clothes drawer has been emptied of all clothes, not just the darks. The whites were re-installed, minus all the socks, because all non-dress socks, and white socks, were up for laundry. Although there is no thought of pairing socks at the outset of laundry, the pairing occurs at the conclusion. In the weeks the socks are in the

drawer dirty, where might the missing singles have gone? The question has been answered, as in the third week of July, another check in the socks drawer has found the dark sock. The off-color tan or brown single sock has not been found, and is assumed not to be returned. There is a problem introduced here. The sock which is the olive-slate color is returned. It is smelling sweet, and has been washed. It has not been pressed, though. The mystery is why the other mismatch has been lost. Someone going to the vanity of stealing socks cannot have been called to snatch them from the laundry. The odds of appropriating only mismatches in the argyle-typed socks approaches one in thirty among the numbers in the load for that wash cycle. With a full load of laundry, to sort through would be a herculean task to go through on the flash of a moment of theft. No, there is something else going into the mystery. There is question of who has access to the clothing of the plaintiff, when the plaintiff is not going to the laundry room, or to dry them up the street at the laundromat for commercial use, where almost every second of their time in the bin is timed for stratified extraction through the drying process (when clothes are in the front-loading machines, no access to them is possible due to machine operation)? This is not a simple problem of theft for harassment. It is not a simple problem of the low-man on the totem, which is forced to wait a day and a half, for the laundry room to be accessible in a denial of service attack, on a Friday morning at the laundry room. Minor inconveniences, and loss of twenty percent of dress clothing for the feet? How much of a problem does this spell?

Within the span of two days, another incident has come through the residents on the floor alerting the problem of undue influence. On a shower night (excessively hot and humid evening) Plaintiff rushes into the bath-shower room, before bedtime. Complete the shower and clean up, and as was drying Plaintiff has to move out of the way of #212 John moving through the door into the bathroom. Personal spaces are sometimes challenged, and done so deliberately with this individual. As John, #212 has gone directly to the sinks to wash cups or fill carafe with water, Plaintiff stopped toweling and picked up quickly to move along. Exiting the shower room/necessary room, there is a span of some twenty feet and a right turn on the corridor leads one to the main hallway. Plaintiff left the bathroom, and in somewhat of a hurry comes round the corner, and 45 degrees Plaintiff discovers John#215 at his left center of the long hallway, almost standing there. Plaintiff sought at first to take the right side of where John was starting up, but because John, #215 has moved to avoid an intersecting course, John also moves toward his right. Plaintiff switches to the left side of John and along the side of the wall at the corner.

# United States District Court

## District of Massachusetts

|  |  |
|---|---|
| Jeffrey Taylor, <br> *Plaintiff* | ) <br> ) <br> ) <br> ) <br> ) |
|  | ) Post CA—04-11802 EFH |
| - verses - | ) <br> ) <br> ) |
| Central House, YMCA, <br> Residence, and CHA-member, <br> Defendant | ) <br> ) **AFFIDAVIT** — Document <br> ) <br> ) 09 AUGUST 2006 |
| S-C Management Corp., <br> Defendant | ) <br> ) <br> ) |
| Central House, Officer <br> Defendant | ) <br> ) <br> ) |
| J. Doe, Entity Unknown(s), <br> Defendant | ) <br> ) <br> ) |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Letter of A.LR. to Plaintiff, April 11, 2006/ Letter of A.LR. to Plaintiff, February 25, 2005.

I, Jeffrey Taylor, state and depose, under the pain of perjury, the accuracy of attached letters' content herein, 09 August 2006.

Jeff Taylor



THE MERVYN D. DEMBLE
RESIDENCE AT THE
CAMBRIDGE FAMILY YMCA

820 Massachusetts Avenue
Central Square
Cambridge, MA 02139-3296
Property Management: 617-876-4620
Fax: 617-876-4619

☐  / 2130 ☐

February 25, 2005

Mr. Jeff Taylor
Unit # 216

Dear Mr. Taylor:

Since you were seen vandalizing the Chinese food today by taking a plate of peas and other vegetables and callously disposing of them into the white rice, you are hereby given your one and only warning that this type of behavior will not be tolerated.

By doing this, you ruined that whole tray of white rice which is supposed to be plain. You prevented the other residents who ate after you to enjoy the rice the way it is supposed to be eaten.

To reiterate, you are hereby notified that this is the only warning you will be given. If it does happen again, you will not be allowed to attend any further events given by this office.

Sincerely,

Antonette E. Rosa

Antonette LaRosa
Assistant Property Manager.

Central House
820 Mass. Ave.
Cambridge, Ma. 02139
617-876-4626

April 11, 2006

Mr. Jeff Taylor
Unit 216

Dear Mr. Taylor,

This morning you were seen putting a crumbled up paper towel in our deposit box. This is not acceptable. If you have trash to dispose of please put it in a trash can.

If this behavior continues you will be putting your housing in jeopardy.

Sincerely,

Antonette LaRosa
Assistant Property Manager

# United States District Court

District of Massachusetts

FILED
CLERKS OFFICE

2006 AUG -9  P 4:37

DISTRICT COURT
DISTRICT OF MASS.

|                                                    |   |                              |
| -------------------------------------------------- | - | ---------------------------- |
| Jeffrey Taylor,<br>*Plaintiff*                     | ) |                              |
|                                                    | ) | Post CA—04-11802 EFH         |
| - verses -                                         | ) |                              |
|                                                    | ) |                              |
| Central House, YMCA,<br>Residence, and CHA-member,<br>Defendant | ) | **AFFIDAVIT** –- Document |
|                                                    | ) | 09 AUGUST 2006               |
| S-C Management Corp.,<br>Defendant                 | ) |                              |
|                                                    | ) |                              |
| Central House, Officer<br>Defendant                | ) |                              |
|                                                    | ) |                              |
| J. Doe, Entity Unknown(s),<br>Defendant            | ) |                              |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Email Letter of Plaintiff, June 17, 2006/
addressable to housing support, attachment is PDF document
dated for the same day. Page number two for the email printing
on the 19 June 2006 is not supplied, but contains reference to
signature block for Plaintiff. Attachment is labeled
"CHA_17_JUNE_2006.pdf," and was xmitted 9:40 approximately
on the same day.

1. Jeffrey Taylor, state and depose, under the pain of perjury,
the accuracy of attached letters' content herein, 09 August 2006.

Jeff Taylor

 **Hotmail®**

j_taylori@hotmail.com                                                    Printed: Monday, June 19, 2006 5:44 PM

| **From :** | jeff taylor <j_taylori@yahoo.com> |
| **Sent :** | Saturday, June 17, 2006 9:40 AM |
| **To :** | M Johnston <mjohnston@cambridge-housing.org> |
| **CC :** | Susan H <shegel@gbls.org> |
| **Subject :** | THANK YOU |

📎 Attachment : CHA_17_JUNE_2006.pdf (0.05 MB)

MIME-Version: 1.0
Received: from web60721.mail.yahoo.com ([209.73.178.209]) by bay0-mc1-f19.bay0.hotmail.com with Microsoft SMTPSVC(6.0.3790.244
Received: (qmail 52598 invoked by uid 60001); 17 Jun 2006 13:40:57 -0000
Received: from [204.167.92.26] by web60721.mail.yahoo.com via HTTP; Sat, 17 Jun 2006 06:40:57 PDT
X-Message-Info: txF49IGdW41Vv7uhbbCDsY7nMGxv/NIU4op/Yz70yAIw=
DomainKey-Signature: a=rsa-sha1; q=dns; c=nofws; s=s1024; d=yahoo.com; h=Message-ID:Received:Date:From:Subject:To:Cc:MIME-
b=znHtyKjtKK3y9DPM5PDn+hS0obFr7V15uHyGviJJGiQwUzjHuVVYqPTZRMU/4IJ3SieG4xgRgHww7UYE/uRYewDUZJZTrDsu3kM0uW0g8FD

Return-Path: j_taylori@yahoo.com
X-OriginalArrivalTime: 17 Jun 2006 13:40:58.0972 (UTC) FILETIME=[AA8821C0:01C69213]

    please refer to attachment

PO Box 391731, Cambridge, Massachusetts 02139-1701
Voice Mail: 617.918.7873
< j_taylori@yahoo.com >

June 17, 2006

Michael Johnston, Director
 Leased Housing and Occupancy
Cambridge Housing Authority
675 Massachusetts Avenue
Cambridge, MA

Dear Mr. Johnston,

The email sent out this week for Tuesday has been missed — in which you
have declared meetings on conference panels dismissed. The delivery of the
printed appeals request turned into the CHA=legal department May 19, 2006.
My voice mail message to your hired assistance, as well, has not conveyed an
expected input, and notice of attendance for the June 14 agenda.

Thank you for seventy minutes on information session, and the
accommodations in order that a grievance has been heard.

Sincerely,

Jeff Taylor

# United States District Court
## District of Massachusetts

FILED
CLERK'S OFFICE

2006 AUG -9  P 4: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

Post CA--04-11802 EFH

|  |  |
|---|---|
| Jeffrey Taylor,<br>*Plaintiff* | ) |
|  | ) |
| - verses - | ) |
|  | ) |
| Central House, YMCA,<br>Residence, and CHA-member,<br>Defendant | ) **AFFIDAVIT** — Document |
|  | ) 09 AUGUST 2006 |
| S-C Management Corp.,<br>Defendant | ) |
|  | ) |
| Central House, Officer<br>Defendant | ) |
|  | ) |
| J. Doe, Entity Unknown(s),<br>Defendant | ) |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Letter of Cambridge Housing agency legal department,
May 16, 2006/ addressable to Plaintiff regarding housing support. The
intent of the Letter of 05/16/2006 is to establish a meeting time, for an
agenda of administrative hearing on small claims particulars, and for
grievances.

I, Jeffrey Taylor, state and depose, under the pain of perjury,
the accuracy of attached letter herein, 09 August 2006.
Plaintiff learned that Panel Hearing was not materialized.
Plaintiff left April 06, 2006 document on overpayment of minimum
rents, along with note on CPD05-11190.  Phone calls were not
acknowledged to Plaintiff.  The panel meeting consisted of
meeting with Mr. Johnston, and Plaintiff.

Jeff Taylor 

05 2506 |



CAMBRIDGE HOUSING AUTHORITY

675 MASSACHUSETTS AVENUE, CAMbRIDGE, MA 02139 p 617 864 3020 / TDD 800 545 1833 x112 • f 617 868 5372 • w WWW.CAMbRIDGE-HOUSING.ORG

May 16, 2006

Jeffrey Taylor
PO Box 391701
Cambridge Ma 02139

**Re:    Notice of Conference Panel Hearing**

Dear Ms. Jeffrey Taylor,

This notice will serve to confirm that the Cambridge Housing Authority's ("CHA") Leasing & Occupancy Department has scheduled your Conference Panel Hearing. The hearing will take place on **Wednesday, June 14, 2006, at 11:00 a.m.**, at the offices of the Cambridge Housing Authority located at 675 Massachusetts Avenue, Second Floor, Cambridge, Massachusetts.

Michael Johnston, CHA's Director of Leasing and Occupancy, would like to meet with you before the hearing. Upon receipt of this letter, please contact Mr. Johnston at 617 520 6407 to schedule that pre-hearing meeting and contact me at 617 520 6242 to confirm the date of the Panel Hearing. If I do not hear from you by 5:00 p.m. on **Monday, June 12, 2006**, the Legal Department will assign your appointment to the next person on the Conference Panel waiting list and your appeal will be dismissed.

If you have any additional documentation to present to the CHA in this matter, please submit these documents prior to the date of the hearing. The Conference Panel will not allow you to introduce any additional documentary evidence during the hearing. If you have any questions concerning the hearing, please feel free to contact me at 617 520 6242

Sincerely,

Samantha Martin
Legal Assistant

☗ *Equal Housing Opportunity*

# United States District Court

## District of Massachusetts

FILED
OFFICE

2006 AUG -9  P  4:31

DISTRICT COURT, MASS.
DISTRICT OF MASS

|  |  |  |
|---|---|---|
| Jeffrey Taylor, *Plaintiff* | ) ) ) ) | |
| - verses - | ) ) ) | Post CA—04-11802 EFH |
| Central House, YMCA Residence, and CHA-member, Defendant | ) ) ) ) ) | **AFFIDAVIT** — Document |
| S-C Management Corp., Defendant | ) ) ) | 09 AUGUST 2006 |
| Central House, Officer Defendant | ) ) ) | |
| J. Doe, Entity Unknown(s), Defendant | ) ) ) ) | |

Commonwealth of Massachusetts
County of Middlesex

Documentation. eMail Letter of 13 June 2006 from director of leased housing, with Cambridge Housing Authority. This is a reply communication to a letter from Plaintiff in first week of June 2006, for housing support, and upon learning shortly before of the e-mail addresses of several of the addressees. A reference to an attachment herein, was given by magistrate judge as "an unsigned document," small claims, district court for the Middlesex County. This is simply conformed document dated May 19, 2006 (conveyed by hand). The June 06 attachment is not supplied in this affidavit.

I, Jeffrey Taylor, state and depose, under the pain of perjury, the accuracy of attached communications' content, 09 August 2006.

Jeff Taylor

# YAHOO! MAIL

Print - Close Window

**Subject:** Re: "S Hegel" <shegel@gbls.org>, 'L Booth" <lbooth@ceoccambridge.org>

**To:** 'jeff taylor" <j_taylori@yahoo.com:>

**CC:** shegel@gbls.org, booth@ceoccambridge.org, SMartin@cambridge-housing.org, ASullivan@Cambridge-housing.org

**From:** MJohnston@cambridge-housing.org

**Date:** Tue, 13 Jun 2006 14:22:28 -0400


As I have not heard from you and the other 3 cases for tomorrow have been
settled, I am forced to cancel your hearing. Once you contact me with the
specifics of your case, I will schedule you for the first available hearing
slot.

Michael J. Johnston, Esq.
Director, Leasing and Occupancy
675 Massachusetts Avenue
Cambridge, MA   02139
(617) 520-6407 Phone
(617) 520-6420 Fax


                          jeff taylor
                          <j_taylori@yahoo.           To:
MJohnston@cambridge-housing.org, j taylor
                          com>                         <j_taylori@yahoo.com>
                                                      cc:
                          06/06/2006 07:06            Subject:  "S Hegel"
<shegel@gbls.org>,  "L Booth"
                          PM                           <lbooth@ceoccambridge.org>


mr johnston,

i will telephone in response to nay 15, 2006 cha letter.

sincerely,


jeff

jeff taylor
po box 391701
cambridge, ma 02139

v-mail:   617.918.7873

_____

Do You Yahoo!?
Tired of spam?  Yahoo! Mail has the best spam protection around
http://mail.yahoo.com (See attached file: mjj_CHAjun06.pdf)(See attached
file: 2006CHAmay19.pdf)

**Attachments**

Files:

📎 **mjj_CHAjun06.pdf** (46k)

📎 **2006CHAmay19.pdf** (66k)

Cert. of the Applicant in cause:

NAME: _____ JEFFREY TAYLOR _____ .

ADDRESS: __No. 216, MASSACHUSETTS AVENUE, CAMBRIDGE, MA  02139_____ .

TELEPHONE NUMBER: ___617.918.7873_____ .

MAILING ADDRESS (IF DIFFERENT FROM ABOVE): _____ .

Reasons:   Denied emergency housing _____        Denied housing ___☑____

Termination of Section 8 _____        Termination of 707 _____

Below, if you disagree with the Cambridge housing authority action, state what are your reasons. (If you need more room, use the back of this sheet).

Under denial of housing status, for reasons of CHA position on waiver of minimum rent status, 1) the disposition of CHA-member has been for removal of applicant from the residence, and 2) the disposition has been to avail the housing agency for a physical move/remove of occupant and renter, J. Taylor, when the occupant is without occupation/work, i.e., civil disability status.

The housing codes are specific on minimum rent status, as well as exemption options upon a threat of eviction for no good/just cause. Not being able to pay rent is a legal disability: Insufficient cause for not opting/granting waiver of minimum rent.

SIGNATURE: _____        DATE: _____May 19, 2006__

Return this form to:

Cambridge Housing Authority
Cambridge, MA 02139

# United States District Court

District of Massachusetts

FILED
IN CLERKS OFFICE

2006 AUG -9 P 4: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

Post CA—04-11802 EFH

|  |  |  |
|---|---|---|
| Jeffrey Taylor,<br>*Plaintiff* | ) | |
| | ) | |
| - verses - | ) | |
| | ) | |
| Central House, YMCA,<br>Residence, and CHA-member,<br>Defendant | ) | **AFFIDAVIT** — Document |
| | ) | 09 AUGUST 2006 |
| S-C Management Corp.,<br>Defendant | ) | |
| | ) | |
| Central House, Officer<br>Defendant | ) | |
| | ) | |
| J. Doe, Entity Unknown(s),<br>Defendant | ) | |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Letter of Plaintiff to office administrator with the
Cambridge MultiService Center, 19 Brookline Street, Cambridge,
Massachusetts 02139. This letter was mailed with an attachment of
April 06, 2006 statement supporting claims in small claims court.

I, Jeffrey Taylor, state and depose, under the pain of perjury,
the accuracy of attachment herein, 09 August 2006, and that
letter was mailed first class to the addressee, a day or two
after composition of letter.

Jeff Taylor

PO Box 39170., Cambridge, Massachusetts 02139-1701
Voice Mail: 617.918.7873
< j_taylori@yahoo.com >

July 18, 2006

Mr. Lyn Thomas
Cambridge MultiService Center
19 Brookline Street
Cambridge, Massachusetts   02139

Dear Mr. Thomas:

Thank you for the time to discuss support in housing in
conference with John Taylor today.

I am enclosing some documents for the purpose of further
explaining why I had chosen to reclaim a portion of the rent
monies already paid to CHA-member at the Young Men's Christian
Association, Cambridge.  These amounts are not insignificant.

Inexperience with the system of rental payments on a subsidy
schedule drawn up for the YMCA has led me to conclude that
minimum rent overpayment has existed.  As any business expense
(i.e., even in asking for support dollars), the amount paid in
period of non-work (aka, no income) on weekly pay, or pay
period in cycles of days, was written on periods of no income.
I have missed many opportunities to invest in specific health
care needs/requirements, as the bank accounts have come to nil
in reconciling with paying on rent without a timely exemption
for necessary budgeting for necessary health-related services.

So, the amounts sought under law suit had been minimal; the
judge has defaulted in favor of not granting a payment on
overpayments on minimum rent status.  The document April 06,
2006 details further on the specifics.

Thank you for assistance where there may be any.

Sincerely,


Jeffrey Taylor
 Attachments

# United States District Court

District of Massachusetts

| | |
|---|---|
| Jeffrey Taylor,<br>*Plaintiff* | )<br>)<br>)<br>) |
| - verses - | )   Post CA—04-11802 EFH<br>)<br>) |
| Central House, YMCA,<br>Residence, and CHA-member,<br>Defendant | )<br>)   **AFFIDAVIT** — supplemental<br>)<br>)   10 AUGUST 2006 |
| S-C Management Corp.,<br>Defendant | )<br>)<br>) |
| Central House, Officer<br>Defendant | )<br>)<br>) |
| J. Doe, Entity Unknown(s),<br>Defendant | )<br>)<br>) |

## Commonwealth of Massachusetts
## County of Middlesex

Commonwealth of Massachusetts
County of Middlesex

## Documentation.

Continuing from documents submission August 09, 2006, this omitted page attachment fits with the electronic mail transmitted as described to the director of the Leased Housing and Occupancy (with the Cambridge housing agency). The attachment has been sent by Plaintiff and is recorded here faithfully as to the original in the form of a portable document formatted text. created, Plaintiff believes, June 06, 2006, 6:03:26 p.m. I Jeffrey Taylor, depose and state that said document conforms to the above statement, under penalty of perjury, and is accurate.

Signature:

No 216, 820 Massacusetts Avenue, Cambridge, Massachusetts
02139
Voice Mail: 617.876.2858
< j_taylori@yahoo.com >

Dear Mr. Michael Johnston,

It is not known what to say to you, Mr. Johnston. The legal department
at the housing Authority in Cambridge addresses their letter to "Ms.
Taylor" in requesting that I connect, and to reference your presence in a
conference panel hearing on an Appeal I have demanded.

A Conference Panel Hearing will convene for a June 14, 2006 session
reviewing the CHA-choice for denial of the minimum rent, which was
effective February 2006. Your recent interest is an indication of
providing relief to the CHAmandates which override the regulations of
minimum rent status (communication to legal rep, Cambridge and
Somerville Legal Services).

The appeal is an action, were it not in place, would mean certain
eviction, and loss of the apartment Plaintiff has had use — — if instead
of selling city/county-w de services employment could be [permissible],
the housing authority should be interested in providing a more secure
renting space in which to raise a career and business, and not less.

Very truly,

Jeffrey Taylor