# United States District Court
District of Massachusetts

| | |
|---|---|
| Jeffrey Taylor,<br>*Plaintiff*<br><br>- verses -<br><br>Central House, YMCA,<br>Residence, and CHA-member,<br>*Defendant*<br><br>S-C Management Corp.,<br>*Defendant*<br><br>Central House, Officer<br>*Defendant*<br><br>J. / J. Doe, Entity Unknown(s),<br>*Defendant* | Post CA—04-11802 EFH<br><br>**AFFIDAVIT** — Reference<br><br>23 AUGUST 2006 |

Commonwealth of Massachusetts
County of Middlesex

Documentation. Reference material in statement of prior August 2006 submission.

There is the statement that an attorney has telephoned plaintiff with a short address of another. The voice mail greeting in reference to ``John'' is not problematic. The page here presents an idiosyncrasy for authorized attorney from public service group for help with housing issues. The social aspects of why such a fault is showing reflects only to the character of the attorney, and not to the quality differences of service plaintiff is aware of with respect to the Plaintiff's conflicts in housing, public use of funding for housing.
   I, Jeffrey Taylor, state and depose, under the pain and penalties of perjury 23 August 2006, that the attached form has come from attorney.

          [ Signature ]


          [ Date ]

# United States District Court
District of Massachusetts

| | |
|---|---|
| Jeffrey Taylor,<br>*Plaintiff*<br><br>- verses -<br><br>Central House, YMCA,<br>Residence, and CHA-member,<br>*Defendant*<br><br>S-C Management Corp.,<br>*Defendant*<br><br>Central House, Officer<br>*Defendant*<br><br>J./J. Doe, Entity Unknown(s),<br>*Defendant* | Post CA04-11802 EFH<br><br>**AFFIDAVIT** — Document<br><br>23 AUGUST 2006 |

Commonwealth of Massachusetts
County of Middlesex

---

Documentation: Attachment. Plaintiff is familiar with the methodology of the opponents interested in seizure and capture of material in the possession of plaintiff. That belongings of the PLAINTIFF are routinely inspected is not a subject of speculation any longer in the years resident in Massachusetts, as there is sufficient history established in absence of any check on monitoring the plaintiff, and what plaintiff carries, or has in his possession. The motive of the theft of the items does not always correspond to the utility of the material goods taken and

appropriated, as the search activity PLAINTIFF believes is the most important guide of the opponents. One cannot steal a thought, or a song, or a conversation piece, but there are methods available to the researcher to "capture" such an event as passing one where there are no physical samples to appropriate. One looks here for conversations, lectures, and where law enforcement works unseen, wiretapping communications. These illicit activities are valuable in obtaining first hand knowledge of a subject and the subjects intended itinerary. For the moment, the physical things for seizure plaintiff now refers to in the tactics of gaining control is one and the same in the following incident:

Permit Plaintiff to recall an incident of commandeering plaintiff's possessions in the State of Florida, in the winter season of the 1974-1975 year. It was the last time plaintiff has traveled in the state of Florida, without transportation of his own. On the main route from Atlanta to Jacksonville, Plaintiff was delayed by infrequent lifts. The method of travel with shortage of funds is by hitch-hiking, and short rides which did not meet the destination on an expected schedule, therefore did not arrive at a time expected and was evening and after dark two or three exits from Interstate 75. One ride deposited Plaintiff on a very isolated county road on the exit from the highway. At the entrance ramp, Plaintiff had another ride offered by a couple, who were with a younger male driver. The short ride placed the plaintiff on an exit of route 90, the interstate equivalent of Route 10, or I-10, a half an hour outside of Jacksonville. The three persons were in conversation with the Plaintiff for less than an hour,

but they seemed to have changed plans, and were then stopped at the exit in western Jacksonville / Duval County. As the Plaintiff was unloading upon exit of the rear seat, and was retrieving the backpack, the driver un-braked, and began to pull away while the Plaintiff was bent over extracting a shoulder bag. The reach for the backpack brought the plaintiff back into the car's very interior, but as it was being handed to the plaintiff, the driver also was accelerating.

In mid-stride the car broke the connection and the belongings which the Plaintiff was carrying. They had been seized instead by perpetrators who had been assisting the Plaintiff to arrive at a destination, but were really at work in plying a trade to overtake matters they perceived would personally enrich them. Among the books garnered, and stolen for good, was one paperback for thoughts on education, containing essays from Thos. Jefferson, itself purchased from a yard-sale in Arlington, Vermont in the year previous.

Plaintiff has attended college for a year at Jacksonville University, ending in 1969. Conditions permitting, a stop had been planned there in the days following, along with a visit to Herb Smith, a reptile collector who had a residence on the south side of Atlantic Boulevard. Though the university was not to become the alma mater, it was important that the plaintiff was to visit. As then, and now, a visit to the college in person would be the next best thing that could be mustered for a homecoming. It would be an

equivalent activity to be reconnected with the establishment, and perhaps some of the people there, though classmates would have been be expected to have moved along.

The Plaintiff's response to the theft of the backpack on the roadside was a call to the local authorities, on the night of the transgression, where the suspects were actually apprehended on their drive-through in the ensuing minutes of the police response to the same vicinity. Once pulled over, they were questioned, and the Plaintiff was brought where more questions were drummed in the presence of the victim. The patrol-car detail demanded a search of the out-of-state vehicle, and a cursory inspection (open trunk, and search) reveals that the books and nylon down sleeping-bag, as well as any camera gear with the plaintiff, the aluminum frame, and backpack were not among the domain of the car; nor was their testimonial a true representation of the relation to the Plaintiff, denying what was once transpired.

The Plaintiff at that time now defers the travel further along, and to the south, on altered plans. Plaintiff in the days following accomplished as what was permissible from the standpoint of logistical handicap of transportation and a reliance upon others. An interested party was found at Atlantic or Neptune Beach. The quest for recovery of belongings produced a success on the second pair of shoes only. Plaintiff was informed that relatives in the local area of the

scene placed the perpetrator group in the neighborhood of the exit from the highway.  One person, named Green, was cited by a station spokesperson as owning a house, on the southern side of a Cecil Field outstation, a military camp, or reservation for the U.S. Air Force (maps for commercial use designate such an area in this way).  Plaintiff was back at the local exit with assistance searching the roadsides for possessions believed to be tossed, like the sneakers, and transferred so as to break the guilty link to the apprehension of property.  On the spot information, like road directions, was obtained from a resident on one of the circles, or looped roads, not a mile from the crime scene.  A stroke of pure coincidence has produced the asking of directions from the resident on the lane who actually was a member of the patrol response team on the night of the incident of robbery.  On that mid-morning, this officer happened to be in his driveway at the car, appearing to be engaged with the car's maintenance or content organization.

   Other roadside searches in the rest of the day were not productive.  The map annexed to this affidavit is as close as the Plaintiff may recall the location and index of the matter of the loss of travel gear and paraphernalia.  Plaintiff's experience is rather damaged, as the question of what the predominating view of the seized goods and the value of their assignation might have caused the perpetrators to behave in such ways of the highway robbery.  Of course no property has

been recovered, but instead a warning is generated and has caused deep concerns over the relation to the political system Plaintiff has associated with the community once known at the town, and what changes that are now introduced into the ethical involvements previously established, such as the investments with the Jacksonville University. There have been other errands the plaintiff has promised. Ethically, at such an outrageous expense, Plaintiff is not required to establish further community connections, except for those with the school since in view of other interactions with the city, the appropriation of the travel gear, and books, may have to be interpreted to mean an arm of a prosecutorial stance. The seizure of the backpack has been done to produce evidence of some manner of inquiry into the content of the Plaintiff's gear. The thinking of this means that the presence of the Plaintiff on route to places and people of the city have been viewed in such a way that places plaintiff as a person being suspected of posing and acting in a drug runner role, and that rather than suspecting one of those interstate travelers with a BMW and a hot list of visits, instead has to view one on the low end of the economic spectrum on the same turf with those sordid other activities.

   Additionally, it may be that concerns of liability and responsibility to personal injuries sustained by the Plaintiff override any of their other concern of

the mere blame for property loss — at their discretion and being careless in doing so.

Plaintiff strongly asserts that the same modus operandi places a high upstream agenda of "to take that which is demanded" upon first setting down in the state, as one delivered in which targeted Plaintiff, and Plaintiff's early arrival.  It has functioned to appropriate belongings on the first occasion of plaintiff setting foot on the soil and land of Florida in the winter of 1975.

Plaintiff is familiar with the tactical methodology of the opponents in directive to the seizure and capture of material in the possession of plaintiff, as what may be owned by Plaintiff.  As the material property has been looted from the spaces accorded to the Plaintiff from time to time, a seizure of a hard rubber-ball, a pen, an article of clothing, and in a recently connected history, socks and a sweater, are one and the same thing.  And these are the tools that are used to gain access to the areas, or spaces, that are the personal domain of the Plaintiff, and for the most part can be considered separate from spells and witchcraft.  There is the strong association as well, for in the next step, or relationship linking those acquisitions, is one of the supervisory types who have established those links and relationship to the Plaintiff.  In the case of the vanishing backpack in Florida, it can not be thought otherwise that where the kernel of thinking placed illicit drugs, or medical related paraphernalia, and possession of materials illegal, there has been discovered neither gold or diamonds, but books and habitual things in which to travel, and instead of cocaine and heroin, the supervisory types can now be feasting on tracks of philosophical musings of Albert Camus and Thos Jefferson.  The Plaintiff will also state at this time a meme to recognize these wanton acts of uncivilized behavior as non-sense, and as un-official as random crime.  The only randomness one has to bear in mind to exhibit real concern is the correlation of who fetishes for socks, where socks are more than that of footwear.  An official tone, in the medical arena, or in sanctions,

on the other hand of serious concern *are* appropriate where material is in use for official business, as in commandeering resources, not limited in areas of health, for which to prosecute a suspect, especially with a medical agenda. Here, Plaintiff recalls a locale, an incident, and attaches a map for a reference in past activity.

```
I, Jeffrey Taylor, state and depose, under the pain and penalties
of perjury 23 August 2006, the accuracy of attached map printout
of a image of a geographical layout, and the veracity of the
statement herein — it is a finder's cache from a website devoted
to bringing road maps with standard geographical features to the
requester.  Presently, for the moment, Plaintiff may not warrant
or certify a one-to-one relationship between the elements of the
said printout for the intended signs and representation of which
they are created, as the actual correspondence of their symbolic
meanings to the objects in physical space they characterize are
only to be derived from the features of the land, and of the
designated naming conventions they are based upon.
```

_____
[ Signature ]

_____
[ Date ]

Jacksonville, Florida, United States

[Map of Jacksonville, Florida showing streets including Jeana St, Forgotten Way, Hamlet Rd, Hamlet Terrace, Joes Rd, Blair Rd, Shady Crest Ln, Legg Dr, Mahan Dr, Crystal Springs Rd, and Forgotten Way]

**Populated Places**
- ■ Major City (1,000,000+)
- ⊙ City (500,000 - 999,999)
- ⊙ Minor City (100,000 - 499,999)
- □ Town (20,000 - 99,999)
- ∘ Other Place
- ■⊙□∘ National Capital
- ■⊙□∘ Other Capital

**Soho** Neighborhood

Copyright © 1988-2002 Microsoft Corp. and/or its suppliers. All rights reserved. http://www.microsoft.com/streets
© Copyright 2001 by Geographic Data Technology, Inc. All rights reserved. © 2001 Navigation Technologies. All rights reserved. This data includes information taken with permission from Canadian authorities © Her Majesty the Queen in Right of Canada.