United States District Court
District of Massachusetts

FILED
IN CLERKS OFFICE

2006 NOV 15 ⊃ 4: 07

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| Jeffrey L Taylor, *Plaintiff* | ) ) ) ) ) ) | **PJ CA04—11802 EFH** |
| — verses — | ) ) ) | |
| Cambridge Housing Authority, *Defendant* | ) ) ) ) | |
| Central House, YMCA, Residence, and CHA-member, *Defendant* | ) ) ) ) | **AFFIDAVIT — DATA** |
| S-C Management Corp., *Defendant* | ) ) ) ) | **16 November 2006** |
| Central House, Officer *Defendant(s)* J./J. Doe, Entity Unknown(s), *Defendant(s)* | ) ) ) ) ) ) | |

Commonwealth of Massachusetts
County of Middlesex

## DOCUMENTATION for November 16, 2006

This affidavit contains developing material related to the cause of complaint initiated to address invasion of privacy, loss of constitutional right of due process and damages to persons (a person's reputation is a propriatary matter as much as a possession). Amendment IV infractions have lead a historic path that plaintiff is currrently illustrating. Notes are a basis for outlining specific community-based problems. Attachments hereto today relate to the notations of a general journal.

In the year 2006, Plaintiff has rebuilt three computers to sustain employment prospects, among

other things [SEE NEXT SECTION]. The demand for
records with housing options is considerable, and
these are compounded by the thieves who insist on
right of access to papers and things written by
Plaintiff. (In the recent month, and recent period
of months, the Plaintiff's backpack has been a
target of the seizures, some, if not all, have been
related to activities of the church where Plaintiff
has left the backpack unattended for short
periods.)

The 6.4 Gigabyte disk, which has records from
2005 and more, has been subjected to damage which
prevents access to the Win98 operating system, and
files where certain references to church and
community relations are present. It was acquired
for trade at SwapFest MIT August 21, 2005 and put
into system August 25, 2005 for Word Processing.

The kind of damage it has sustained prevents
startup, as well as the access to the disc by the
Win98 Start UP Disc (1.44MB floppy), which is used
for diagnostic and repair procedures. These
problems of disc access are software, but the
matter of functioning may as well be proportionally
related to damage on shut downs, other access
mechanisms (others attempting to copy drive
contents, or other methods of opening disc contents
through other computer systems outside of
environment in which the disc sits), and there is
another route to damage which may arise from

deliberate abuse from shut-down or start up procedure (an intent to damage may be caused by electrical interruption, irruption, or simply by turning computer off). A reproduction of page 84, log book two of Plaintiff, is attached as a record of common problems in used computer equipment.

Plaintiff has acquired Dell computer in July 2002 with a 4.3GB drive with Windows2000Pro operating system and had migrated this into the 20GB partition on a 30GB disc purchased December 2003. Linux 9.0 operating systems were installed into the remaining 10GB on this hard disk, and another copy was installed on the 4.3GB hard disk, which has records of job work, and job search, from 2003 and more. The 4.3GB disk has been non-functioning like the 6.4GB disk, but unlike the 6.4GB disc, to this day it is not inaccessible. Because the Windows2000 system did not work for very long (see previous records, evidentiary material), AND because the Linux partitions became non-bootable, the disk itself was moved to the main computer and the 20GB partition reformatted for use with Fedora Core.

The Linux partitions on the 30GB disc purchased December 2003 resided in the latter one-third of the disc spaces. In the Linux 9.0 Operating System residing there were software applications that were only ever available with the start-up disc made for this purpose (1.44MB floppy). The records

available on the 10GB Linux partitions have become available again in fall of 2006. The records of the 4.3GB Linux disk may not be readily available, but also may be fully accessible, unlike the records of the 6.4GB disk with Win98 at the present time. It is uncertain at this time that records in the 4.3GB Quantum Fireball are even extant.

To restate the problem again:  PLAINTIFF is strongly convinced that SOME of the computer problems, and difficulties accessing those hard discs are related to others who have access to the Plaintiff's living spaces.  The computers, which are not hard-wired to other computers otherwise, apparently have been in use by regular and repeated intrusion of those who have physically entered the Plaintiff's room.  It is this group of people who are damaging and deleting some contents, and files, in the computer spaces that the Plaintiff reserves for his use.  If there would be no effort to monitor what the plaintiff thinks or writes, these intercession behaviors would not be present.  If there were no monitoring of the behavior of the Plaintiff, the kind of intervention strategies in use in the residence would not be self-evident, as they are for the Plaintiff, and especially the human relation environment in which the Plaintiff goes about the daily tasks of food shopping, and habituating consumer-related activities.  (As a

second methodology, of course, there are always means by which computer professionals could make data available, as well as cause software related disc-access problems.  This avenue of intrusion is understood to occur any Internet computer, and is related to computer privacy invasion.  Plaintiff does use Internet and collect from time to time software and files available over the Internet.)

To the knapsack/backpack-frame, the down-sleeping bag, and Sears winter coat thieves on the Florida express highway, and ramps, discovering the content of the carrier/container, their motives are well understood.  It is a point of understanding too, that by depriving their owner of the goods therein a statement of their power over the Plaintiff-victim; the simple acquisition of property they once did not have and then in their possession is a manner which could be asserted to enrich themselves of the property that was not among their own.  The enrichment of their lives has inconvenienced the owner, and has been at the Plaintiff-victim's expense.  For an exhibit of outrage, the plaintiff states the Sears coat has been a feature in that prior year's winter as a photograph, the photographic image of which entered into the newspaper at Bowling Green, Virginia (a home for Camp A.P. Hill environment and activity).

Another incident of intervention, related to police activity is one that occurred in a move to

Columbia, MD. Plaintiff's property was in check, in the year 1991, involving rent-a-car Hertz moving truck, and a major credit card. It is similar check on the content of property of Plaintiff. The rent-a-car place in Frederick, Maryland provided a small van-mover, which did not have a license plate in the rear, or somewhere along the next five to six miles of filling the truck, and driving, the license plate had been removed. For the intervention of a Maryland State Trooper, it was not even ten miles of use of the vehicle before an intercession had transpired. Plaintiff was directed to empty the moving van and fill another truck -— at the Hertz rent-a-car center. The checks and searches are in place where normally there would be no requirement, except there are some (citizens, and/or shear police interest) people overly interested in the things that Plaintiff has in his possession. Plaintiff's records therefore contain index of reference of some matter of interest to police in Maryland, Florida, at the minimum for a predilection of finding controlled substances or things. As in the telephone courtesy call of the older brother from Georgia to the Plaintiff's voice mail services as a general notice, and alert, to the community plaintiff resides in, the signal is to be picked up with the housing authority. It is not surprising to find that former military status is a criterion

that involves the older brother and the kind of
messages he has sent, and some of the current
resident-neighbors who present trifling problems to
the Plaintiff at the same time.

*         *         *

June 10, 2006. Complete the installation of a
single CDRW/DVD-ROM drive for the Microsoft
operating system (2001 build, WinME), and added
drive with 20 GB partition for the Linux operating
system (March 2006 system date).  All functions are
operable in the main computer.  The replacement of
the power supply was accomplished in January 2006,
after six months of inactivity.

July 09, 2006.  Back-up computer Build date with
CDRW added from the main computer system.  Fedora
Core 5, March 2006 operating system date.  8,455 MB
disk plus 4,311 MB master drive with a SCSI 2.1 GB
storage drive.  The operating systems installed are
Windows2000Pro, with FC_5 dual boot system and
cross-drive partitioning.  The Windows2000 system
has become inaccessible in July, therefore only
bootable to the Linux operating system at this
time.

20th September 2006.  1,223 MB hard disk added to
10.2 GB storage drive for third computer build for

year 2006.  System is Windows2000Pro, and Dell
photo-printer will only work with Win2000. The HP
Deskjet printer has been out of commission for more
than a year.  The Dell printer currently lacks
fully functioning ink cartridge.  Internet access
capabilities added October 2006.  Internet access
started November.

                    *           *           *

On 14 October 2006, with the equipment provided by
the Cambridge City and city project in Cambridge
Public Internet, Plaintiff has connected up with a
local roof top area network in communications on
the frequencies about 2.422 GigaHertz.  The 108
Mbps rated wireless router is compliant with IEEE
802.11b/802.11g standards and is capable of
functioning in three modes in service of wireless
hookups.

October 21, 2006.  St. Paul African Methodist
Episcopal Church, 85 Bishop Allen Drive, Cambridge,
MA. 01239.  Roughly 9:50 am, there was a denial of
service by staff to Plaintiff at food pantry.
Plaintiff was denied entry at table at entrance.
The staff-person refused to offer the placeholder
card given out for pantry users on Saturday.

October 23, 2006.  Obtain new UPC ID for YMCA

device reader at the resident entrance. Antonette LaRosa, who made intercession for the sake of time, rudely interrupts the time with Marlena, front desk. In fact, Antonette came from across lobby after locking the office to check the mailboxes for items to claim. In point of fact, it was Antonette's asking of Plaintiff's business, and when found out that Plaintiff was suggesting that amendment of the errors in the database, Antonette assumes a bossy stance. She said to leave the front desk person alone, as Marlena was busy and not to trifle her on the job. In the year's past since moving to the device reader at the residence door, Plaintiff has been known to the Front Desk Staff and all the security people as a person ten years younger than the correct age. The most recent question of YMCA residents about any aspect of the Plaintiff's age was from Vincent #201, among the newer residents in the neighborhood. The question was posed within only a few weeks relative to this day.

October 25, 2006. Given notice that, like the Student Partnerships at the Cambridge MultiService Center following spring 2002 enrollment, the Cambridge Employment Program ''can no longer serve'' Plaintiff, for reasons that have been set. Attachments are notices provided that their services are off limits to the Plaintiff. (Two

attachments. One of these document attachments includes a two page statement. The photocopy of a box of diskettes shows time frame of purchase is added.) There were never any active USB ports, which the Plaintiff had relied upon with other computer laboratories, and the library Internet room. Plaintiff has had to wait to purchase new floppy discs (1.44MB), but the attitude of the Cambridge Employment Program counselor has not been accommodating, and in fact, quite un-friendly. Another staff at the employment center's computer lab said she could get the USB permissions set for regular users, but two weeks after the claim, nothing has followed through. Plaintiff includes five pages of email communications, and related material for the Cambridge Employment Program worker to analyze. Some of email material was sent to Mr. J. Youte, as a e-mail carbon-copy, so that direct reference could be assessed of problems encountered from the alma mater of the Plaintiff. Plaintiff did not get permission to send problem material to the job counselor. However, as the problem concerns creditation, and concerns the qualifications of Plaintiff related to work, Plaintiff has sought input from the career counselor. One email is of a single page, sent September 07, 2006. The two-page e-mail letter is dated October 30, 2006, itself matched with a two-page attachment. The communications address

everything related to Mr. J. Youte.

Six-page attachment (2002 resource book):
includes parent organization information, and at
another program, similar computer resource labs
arrangement were made available to city-wide
housing residents of the Cambridge Housing
Authority.  Two of this group of attachments
document the need of a agency:  a self-governance
agreement of a user's awareness of the rules.  If
the behavior of a center user does not conform, it
is by those limitions the agreement is broken.
Similar application triffles to education and
education resources to the law school in the 2004
year were encountered at the resource room with
CCRC.  These are somewhat related to the abuse the
Win2000 computers, and their capabilities to
perform under pressures from those computer
manipulations.

October 30, 2006.  On computer #2 at the Internet
computer room of the Cambridge Public Library, the
first computer open for use, Plaintiff attempted to
access a USB disk but was not able to access the
disk, or pendrive.  Drive G: of the computer has
been administratively blocked from access and the
privileges are not available for lab users.

October 31, 2006 Plaintiff attempted to compose a
letter for email to the Law School Admissions

Council at a computer in the Internet computer
laboratory in the Cambridge Public Library.  The
composition of the letter was in the window block
of the email/browswer.  For some unknown reason
attempting to save the letter, or, making a screen
change caused the letter to wrap up.  The end
result was a closed composition window, and the
inbox of the Lycos mail instated.  The original
composition has been lost, as well as ten minutes
of computer time.  Attachments concerning the
communication to the LSAC are presented.  The copy
of the email is dated at 3:33 transmission time.
It fairly well describes access blockage problems
at the host/portal.  One experienced at 2004 in
another computer lab operated the City.  The two-
page email letter is the response generated by the
technical support team.

October 31, 2006, route ONE bus line, refuses
reduced fare offering of five cent.  Male stocky
driver of bus number ''2226'' cancels the Tuesday
mornging ride to Boston from Cambridge, but admits
young black male rider who searches pockets and
comes up empty.  Commentary: ''What's goin on,
nothin?  Nothin there, huh?''  The driver accepts
that gesture for a pass and entry.  No fare
charged, or demand, in penultimate rider selected
for passage.  Last rider is given a denial, though
a five-cent piece was tendered for fare.  The

driver commentary: ''You've done that before, you did it last week, you do it all the time.'' The bus drivers must only know from the residence providers or other residents the times when Plaintiff is expected to be riding on a bus (medical dates for former points along route #47, times to interview for work).

November 02, 2006. Notify the management staff that smoky and stinky oven burns from neighbor in #215 on the prior day that the smoke detector is most likely malfunctioning because an incident the day before did not produce noise when it should have. An overcooked/burned hot dog is the said culprit for the entire end of the hallway to be overcome by smoke. Plaintiff has summoned a resident counselor for the Nov. 1 lunchtime incident, who cooperatively made response, and secured the area for determining that no flames were present. Alin #211 was leaving the hallway, as the Plaintiff exited from the bathroom just following a shower. Plaintiff identifies #215 as a source of pungent odor. Alin followed Plaintiff to the rear office door on the first floor. The smoke was severely experienced, and the obnoxious odors caused Plaintiff to leave the building. Those at #215's door were not motivated to leave for better air quality. As the incident in years past with the involvement of the resident in #211, Alin, in

which his door remained untouched upon a smoky
event from the #209 unit, while his neighbors, and
Plaintiff across the hallway were forcibly entered
by fire department, plaintiff reasons #211 unit has
a blessing not viewed with most of the second-floor
residents, on the wing of the building to the East
and southern side.  The unit in which #211 has
resided is involved in another smoke-filled
corridor in the same time frame as the one in which
many doors/locks were broken, but Plaintiff only
states that his #211 unit is not a regulated one.
The incident is plus or minus a half-year from the
#209 linen-smoke alarm.  It had arisen from
resident #211 and his heating of bread.  It was
thick white smoke, and no alarm has been generated
as Plaintiff recalls.  An over-cooked bread fills
the entire hallway, however, ventilation in the
building interior spaces was THEN much different,
and sufficient to help get/keep the hall air clear.

On the evening of November 04, 2006, Plaintiff went
to the common room, third floor TV room, in order
to wash some dish wares.    Plaintiff has
encountered a resident lounging and watching the
television.   There was a strong odor of burnt food,
or something else with burnt paper in it.   Most
likely, it is another microwave incident with un-
attended food.  However, there is anther aspect for
reason that the resident, formerly of the second

floor, voicing dissatisfactions.  That Plaintiff is
listening, it is the second step to realize that
there is a strong likelihood of Plaintiff, and
Plaintiff presence, being the motive for the
expression of dislike, and words of malcontent on
non-direct content.  The framing of such sessions
is that, as described in previous filings as
pedagogical emulations/reflections, the focus of
the gripe is the talking of some representation
disguised, and that the content generally has at
its center a piece of meaning which is directed the
person whom the malcontent is really addressing.
It is at times unrecognizable so badly is it
exhibited and acted out.  Another aspect of the
presence of smoke is that is has been an
experimental design, where as a suspect, or
culprits obligate ''object'', the Plaintiff is
experiencing a testing paradigm, not necessarily
one of being a consenting test subject:  But rather
an obligate object of exercise in an informal
assessment for presence of a "carnal knowledge" of
the use of fires.

    This kind of agenda is puzzling.  As in a
puzzle to the missing footwear, the socks at the
laundry.  For example, Plaintiff has lost two socks
(not a missing pair).  Plaintiff sorts and
sometimes folds at the laundry site after drying.
If the bundle of wash was all together at the time
of entry at the Laundromat, the loss of the socks

could only be due to removing them at the dryer, or
for a second while at the time of unloading the
dryer.  The dryer itself was not in visual control
that day.  Plaintiff was handling dried clothes
following unloading the of dryer.  The mismatch of
sock, i.e., the ones missing, would have been, as
it was, discovered there at the point of matching
them, in the proximity of the woman sitting on the
folding table next to Plaintiff.  Was the Plaintiff
expected to explode in discovery of two socks
stolen, and vent a rage of anger on the first
person next to him?  The only other places the two
socks would have been appropriated is at the wash,
upon unloading at the fourth floor residence, or
inside of the room, for the two or three days the
clothes were bundled for cleaning.  The resident of
#215 is capable of following directions for simple
interactions, in fact the orientation for the
resident has been one for interactions, where they
are not expressly unwarranted.  John is prone, and
Plaintiff firmly believes, to want to interact, for
the sake of interaction.  John is also invasive,
but for reasons which are not immediately apparent.
There is the stickiness of something medical, and
tight medical associations.  While he is not an
employee to the medical detachment, there does
appear to be the fore-knowledge of Plaintiff, AND
there is strict sense that he is agent provocateur,
and in the employ of medical facility for gain.

Training is provided.  Like an employment counselor
whose employment is for the city proper, there is
the official tie to the housing agency, and a
notice upon application, that formal ties do exist
to the applicants who use the Cambridge Employment
Program for resources.  There will be reporting of
participation.  The housing agency does have a
right to garner information, and to subject its
applicants to investigation.  Plaintiff defers to
testimony already provided on incident with respect
to the prerogative of that assertion.

Plaintiff states and deposes the passage above under the pains and penalty of
perjury.  Plaintiff certifies the content of affidavit for accuracy as best that can be
maintained, November 16, 2006.

[ Signature ]

| Subject | APPLYING ON-LINE | -- Change header --- ▾ |
|---|---|---|
| Sent Date | 10-31-2006 3:33:00 PM | |
| From | | |
| | "jeff taylor" <jtaylori@lycos.com> | |
| To | <support@LSAC.org> | |
| Cc | <j_taylori@yahoo.com> | |

Isac,

VE: support@LSAC.org

i would like to submit an application online, however, the current application and its status are unknown.

a historic record is there. it has not been accessed. today, i am processing a fee waiver for the applications protocol.

entering information into the blank fields do not bring a screen up to access those records online.

jeff taylor



| Forward | Delete | | Spam | - - Move To - - | ▼ |
|---|---|---|---|---|---|

| Subject | [RE]RE: [<39901>] APPLYING ON-LINE | -- Change header --- ▼ |
|---|---|---|
| Sent Date | 11-01-2006 1:31:39 PM | |
| From | | |
| | "jeff taylor" <jtaylori@lycos.com> | |
| To | <support@lsac.org> | |
| Cc | <j_taylori@hotmail.com> | |

greetings,

thank you for your interest.

online access is dictated by authentication and not whatever the library computers are
equipped with. most computers are up to date on their browser softwares.

this means that in order to read and access details of lsac entries, it is necessary to freshen
the proceedure to access.

jeff taylor
po box 391701
cambridge, ma 02139-1701
v-mail: 617.918.7873

---------[ Received Mail Content ]----------

Subject : RE: [<39901>] APPLYING ON-LINE

Date : Tue, 31 Oct 2006 16:16:00 -0500 (EST)

From : support@lsac.org

To : jtaylori@lycos.com

Dear valued customer,

We will need some more specific information in order to analyze your problem.

What browser are you using? The LSAC website and applications work best on Internet Explorer versions 5 and higher. The latest version is currently available at http://www.windowsupdate.com in the event that you have an older version installed.

What operating system are you using? Right clicking on you My Computer icon will bring up a menu. If you select "Properties", the Operating System version should be at the top of the resulting window.

You may be missing critical windows updates. In order to ensure you have all the latest security patches, open Internet Explorer, click on the "Tools" menu option, and select "Windows Update". If you have not visited that site before, it will prompt you to install a tool which will analyze your system. After the analysis, it will show you a list of Critical Updates for your system. We recommend installing all of the critical updates. There is another section of Recommended Updates that, although you may find them interesting, will not improve your system's compatibility with the LSDAS Electronic Applications.

No other programs should be running while you are accessing the LSAC website or online applications. Close any other windows that are open. Look at your System Tray (in the lower right hand corner of your screen where the clock is). If there are any icons there, try right clicking on them one at a time. If there is an option to close, exit, or disable in the resulting menu, use it. These programs will re-load when your computer is rebooted. If you are running any antivirus or "Internet Security" software, try temporarily disabling it and see if that resolves your issue.

If these steps do not resolve your issue, or you have any further questions, please let us know by either replying to this email or calling us at the number below.

Thank you,

LSAC Support Services

support@lsac.org

215-968-1393

----Original Objective----

From: jtaylori@lycos.com [jtaylori@lycos.com]

Sent: 10/31/2006 3:41:51 PM

To: support@lsac.org

Cc: j_taylori@yahoo.com

Subject: APPLYING ON-LINE

Yahoo! Mail - j_taylori@yahoo.com

**YAHOO!** MAIL

Print - Close Window

**Date:** Thu, 7 Sep 2006 13:12:15 -0700 (PDT)

**From:** "jeff taylor" <j_taylori@yahoo.com>

**Subject:** ?

**To:** dzija@umbc.edu, "Jeff" <j_taylori@yahoo.com>

**CC:** j_taylori@hotmail.com

?

no claim has been set for advanced degree, nor with another school.

jeff


--- Sandra Dzija <dzija@umbc.edu> wrote:

> Dear Mr. Taylor,
>
> Earlier this summer you contacted UMBC's Alumni Relations office to let
> us know that your degree from UM College Park did not show up in your
> record in RetrieverNet, UMBC's new online alumni directory. We checked
> with the data records manager at College Park, who has no record that
> you received a degree from College Park.  I'm not sure there is anything
> else we can do on your behalf if this is incorrect. You may wish to
> contact the Registrar's Office at College Park directly. (Their Web site
> is <http://www.rr.umd.edu/>.)
>
> Sincerely,
> Sandra Dzija
> Director of Alumni Relations
> UMBC
> > begin:vcard
> fn:Sandra Dzija
> n:Dzija;Sandra
> org:UMBC;Office of Institutional Advancement
> adr:806 Administration Building;;1000 Hilltop
> Circle;Baltimore;MD;21250;USA
> email;internet:dzija@umbc.edu
> title:Director of Alumni Relations & Annual Giving
> tel;work:410.455.2210
> tel;fax:410.455.1096
> x-mozilla-html:TRUE
> url:http://www.umbc.edu
> version:2.1
> end:vcard
>
>


jeff taylor
po box 391701
cambridge, ma 02139

v-mail:  617.918.7873


---

Do You Yahoo!?
Tired of spam?  Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

**YAHOO!** MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Mon, 30 Oct 2006 09:47:51 -0800 (PST) |
| **From:** | "jeff taylor" <j_taylori@yahoo.com> |
| **Subject:** | UPDATE FOR THE ALUMNI NOTES |
| **To:** | dzija@umbc.edu, "Jeff" <j_taylori@yahoo.com> |
| **CC:** | "stephen boyan" <boyan@research.umbc.edu> |

dear sandra,

the attachement is for the questions i have brought up for the alumni
services, which up until the spring of the year have been relegated mostly
to the background, and especially with the move to the online records
access.

in the past, those records pertaining to me and employment have been
relayed to credit reporters, whose agency make other distributions of
personal information as well.  the reporting agencies work also in order to
assure authentication and accuracy.

it is my hope that some of the clean up can proceed from today.  if there
is anyway that i can be of assistance please do not hesitate to ask.

jeff

jeff taylor
po box 391701
cambridge, ma 02139

v-mail:   617.918.7873


Get your email and see which of your friends are online - Right on the New
Yahoo.com
(http://www.yahoo.com/preview)

**Attachments**

**Files:**

 **Sandra_alum.pdf** (272k)

Sandra,

To reset a problem here are some additional materials for consideration.

Please note that as with world economic standards, I am one of the 94 percent or so, of the planet, who are not normally channeled into the world wide web, or the INternet resources.

The purposes for which the Alumni offices display MY data are not to be confused with the existing inaccuracies exhibited on my school records. And those error-confused indexes have done so. Those also have been a problem for more than a decade and shall be cleaned up. If the index says being a research assistant has been associated with the Chemistry Department, or UMBC, then those inaccuracies should have been resolved upon the then-current receipt of information.

If the offices under your function have done the routine checks on the content of the records at the UMCP campus, then having not done so with record checks with the UMAB departments shows a shortage on the routine check over to indicate error, where it does show up, when it evident (not from disagreements on your publishing content relevant to me).

Now that you have some real world samples of student variation with dual major undergraduate credentials, it is a matter of presenting this brain-teaser of form to your web-page designers, or the publisher of printed materials at Norfolk, of how to incorporate a page-field which has space for additional designated entries.

Jeff



CloseCall America

UMBC
AN HONORS
UNIVERSITY
IN MARYLAND

JEFFREY L. TAYLOR
820 MASSACHUSETTS AVE
CAMBRIDGE MA 02139-3258

As a graduate of UMBC and a co-founder of CloseCall America, I am proud to announce CloseCall America's partnership with the UMBC Alumni Association.

CloseCall America is a Maryland telecommunications company offering long distance, local, digital wireless, and internet services - as well as our newest wireless internet service - FlyDSL™. *DSL That Fly's™ where you can access the internet from anywhere/anytime. www.flydsl.com.

Founded in 1999, CloseCall America now has over 180,000 subscribers. I invite you to enjoy what these folks already experience - high quality telecommunication services at low prices - all backed by **World Class Customer Service!**

## SPECIAL UMBC ALUMNI OFFER!

As alumni of UMBC you will receive our special "UMBC Alumni" price of **5¢ per minute** for all of your long distance calls - with no hidden charges or time-of-day restrictions.

As you gain confidence in our company you may also wish to take advantage of our local, digital wireless, and internet services. And, you'll enjoy the convenience of one-stop shopping - one bill and one contact for assistance. You can email me at tommr@closecall.com with any questions at any time.

### 2 Easy Ways To Sign-Up

1. Visit www.closecall.com/umbc
2. Call 1.877.81.CLOSE(25673)

We look forward to providing you our **World Class Customer Service!**

Sincerely,
Tom Mazerski '75, President and CEO, CloseCall America, Inc.

Please Remember To Use Your Promo Code During Sign-Up:UMBCLD

LOG book II

27 OCTOBER 2006                                                    84

Window95 Microsoft PLUS, 94 ms [#6062] 11/20/98 file creation

Virus definition is 94 months old.

CD ROM does not produce sounds, although CD is readable.
   Device  Sound Blaster 16      sb16dev.dr  is file for config.
              Device Node reads ≤      20 8F 1D C1
                      Make                   CD 8F 1D C1

                                   and    E8 8A CD C3
   Credin Labs SB 16 Plug and Play    to     CD 8A 20 C3

Computer Compaq DPro4kN has become non-workable, due to
Video suppression. Computer Dell 333, Service tag 7MRR0,
has become non-working. The memory module in the
second position has heated excessively. The video-
mode has become non-functional for the terminal
of ordinary use, and the Number 9 card does not
appear to be of viable use.

23 October 2006 /% has questionable operation for printer
    Services, as the printer quality has become sketchy.

OCTOBER 24, 2006.    /% has sound service daemon warning !
   /% takes excessive time to perform file format conversion
   in PDF.    Performance of computer appears to be
   diminished even on simple OOo save and exit document.
   Log out of user interface is 1/23 minute; which is
   consonant with opening delay experienced upon login.

ITEM: This is a reproduction of the computer log book entries for the middle of October 2006.
Page 84 from manual II shows details of afflictions that affect the performances of the
computers.



October 25, 2006

Jeffrey L. Taylor
820 Massachusetts Ave, # 21
Cambridge, MA 02139

Dear Mr. Taylor,

I am writing to inform you that your membership with Cambridge
Employment Program as of October 25, 2006 has been canceled. Since our
first meeting on 9/11/2006, you have not followed any of my suggestions
and refused to complete any tasks we agreed upon.

Please be advised that you can not access the resource room any longer,
since your membership is no longer valid.

Best Wishes in your endeavors,

John-Marra Youte
Employment Counselor
51 Inman St
Cambridge, MA 02139
617-349-6372

cc:file

51 Inman Street • Cambridge, Massachusetts 02139 • Phone: 617-349-6166 • Fax: 617-349-6175

October 25, 2006.  Time with CEP not a valued commodity.

Wednesday's appointment is complete with a notice to
John Youte that the computing center's computer does
not have a working USB port in which to utilize a flash drive to access documents which Plaintiff may have brought to work on the Employment Program's equipment. Plaintiff said to Mr. Youte, "two weeks ago I notified your staff and today no changes were made to have access to the USB ports. It has been



CAMBRIDGE EMPLOY

October 25, 2006

Jeffrey L. Taylor
820 Massachusetts Ave, # 21
Cambridge, MA 02139

Dear Mr. Taylor,

I am writing to inform you that your m
Employment Program as of October 2!
first meeting on 9/11/2006, you have n
and refused to complete any tasks we a

Please be advised that you can not acc
since your membership is no longer va

Best Wishes in your endeavors,

John-Marra Youte
Employment Counselor
51 Inman St
Cambridge, MA 02139
617-349-6372

cc:file

51 Inman Street • Cambridge, Massachusetts 02139 • Phone: 617-349-6166 • Fax: 617-349-6175

Cambridge Emplo...
51 Inman Street
Cambridge, MA 02139

Jeffrey L. Taylor
820 Massachusetts Ave, #B
Cambridge, MA 02139

1011706        021234461 9002

216

$0.39
US POSTAGE
PRESORTED
FIRST CLASS
MAILED FROM 02139
OAK000009921044
OCT 25 2006

two months that I have worked on getting discs to work
on the computers here.  It has taken two months to get

PJM-CA04 -- 11802

ten dollars in my pocket so that disc purchases could be made." There was no accounting on his records of my formal enrollment, or whether the documentation requested had been processed, or received and verified for proper use. His complaint was that Plaintiff has done nothing to address the letter of his requests. The delivery of documents was accompanied by comments that they were nothing that Mr. Youte, or Susan Mintz had requested, and were irrelevant.

Mister Youte described Plaintiff's claims for education in a manner which has relied upon mistatement of facts in reference materials acted upon. More of an indicator in which Youte has read Sandra Dzija's statements, rather than the critical statement made by the Plaintiff, he has failed to read that no degree was ever actually claimed on RESUMES in Plaintiff's use under the graduate school category. Mister Youte has not made an accusation that facts are falsified in the resume. At the time he complains, Plaintiff makes the distinction, and reasserts that no graduate degree claims have ever been asserted on the resume, and John Youte was studying his computer monitor a little more closely looking for particulars. Plaintiff then recognizes the mistake of the Youte assessment.

There is a claim plaintiff makes which is appropriately suited to the employment program, in which claims of their services have been publicized. Plaintiff stated that roughly three-fifths of the human relationships on the worksites in which the Plaintiff has had to work have already been damaged in some critical way before the Plaintiff has ever really produced anything. The qualifying remarks do not muster a plane of recognition: the response is that, as with several other avenues of appraisal, "YOU DO NOT follow directions like you are supposed to."

The employment agency has formal input ties to both housing agency, and apparently state agencies channels of benefit provisions — another layer of complexity.

USE: CAMBRIDGEEMPLOYMENTPROGRAM 2006



Purchase Date 14 October 2006

## Document from Period of Change in Community Resource:   October 2002

Newly drafted rules set.  Cambridge Employment Program referral, by Housing Authority

10-6

### ABC Community Room Rules and Expectations
MADE POSSIBLE THROUGH FUNDING FROM THE MASSACHUSETTS DEPARTMENT OF EDUCATION, IBM
AND EARLY LEARNING OPPORTUNITIES ACT GRANTS

**Mission:** The ABC Community Room is a *free* resource for local community members
To help with educational and professional purposes

The following procedures are in place to keep the ABC room open to the public, while at
the same time maintain a pleasant experience for all users of the room.  Failure to follow
these rules may result in dismissal from the lab.  If you need help or have questions
please see the receptionist or an ABC room staff member.  Thank you.

**PLEASE REMEMBER...**

**Hours of room:**
- ❖ Monday-Thursday 9:00-4:30
- ❖ Friday 9:00-4:00
- ❖ Scheduled changes will be posted one day prior

**Use of the room**
- ❖ Sign in every time you use the lab, **(this will allow us to report usage to our funders)**
- ❖ Food and drinks are not allowed
- ❖ Keep noise to a minimum
- ❖ Do not use cell phones
- ❖ You are responsible for cleaning up the area around the computer you use – this includes throwing out scrap paper or pages you have printed out and removing trash or personal belongings when leaving
- ❖ Do not remove computer lab property from the lab

**Use of computers**
- ❖ Do not change any computer or printer settings
- ❖ Visitors may not shop or purchase any materials on-line
- ❖ Do not save your work or install programs on any of the hard drives.  A disk may be purchased for .25¢ from the receptionist
- ❖ Do not use a disk or open a message in the lab if you think it has a virus
- ❖ Scan every disk for a virus before using it (if you do not know how to do this, please ask for assistance)
- ❖ Do not download software or programs to the computer
- ❖ Do not install software onto the computers
- ❖ Do not display or transmit threatening, obscene, or harassing materials on the lab computers
- ❖ Do not copy or modify lab software
- ❖ Cannot use for commercial advertising
- ❖ Cannot use copyrighted material in reports without permission
- ❖ Do not use to lobby for votes

*Revised on 10-4-04*

Jonas Mottola, Sh.A
Specia
Programs Mgr

* Do not use to request home phone numbers and, later, make obscene phone calls to the numbers
* Do not use to provide addresses or other personal information that others may use inappropriately
* Do not stream videos or music through the computer

**Printing**
* Pay the receptionist for all sheets printed
* Do not adjust printer settings on the desk top or on the printer/copier
* Do not print documents multiple times, if a document does not print successfully the first time ask for help
* Do not print entire websites. Cut and paste the text you want into a word document then print the document

**In Addition:**
* By using the computers you accept the personal responsibility for reporting any misuse of the room to the staff. **Misuse can come in many forms, but it is commonly viewed as any message(s) sent or received that indicate or suggest pornography, unethical or illegal solicitation, racism, sexism, inappropriate language.**
* The use of the computers is a privilege, not a right, and inappropriate use will result in cancellation of those privileges
* If you identify a security problem, notify the staff at once. Never demonstrate the problem to other users. Any user identified as a security risk will be denied access to the information system
* Any vandalism (defined as any malicious attempt to harm equipment or destroy data of another user) will result in the loss of computer services and legal referral
* Clients will respect the possessions and space of others, use appropriate language, and converse at a level that does not disturb others as they work
* Computers are available on a first-come, first-serve basis. First priority for computer usage is given to those who are working on materials for educational or professional services
* Never hesitate to ask us questions. Our job is to help you learn, and we are never too busy to help!

I hereby declare that I understand the above information and vow to comply with the rules. If I do not comply with the rules then I will not be able to use the ABC Community Room.

Name (PRINT): _____

Signature: _____  Initial contact made (initials):____
Date: _October 06, 2004_  Virus Scan Info sheet given: Yes No

*Revised on 10-4-04*

**Cambridge Center for Adult Education**
42 Brattle Street
Cambridge, MA 02138
www.ccae.org
617-547-6789

COMPUTER SERVICES
Classes in word processing, Internet access, web design, spreadsheets, etc.

FEES AND RESTRICTIONS
$100-$300 per class; classes runs 2-10 weeks

**Cambridge Community Television**
675 Massachusetts Avenue
Cambridge, MA 02139
www.cctvcambridge.org
617-661-6900

COMPUTER SERVICES
Drop in computer lab, courses for beginners, Internet, graphics & multi media. Internet access, scanner and printers available on-site. Drop in hours: Monday - Thursday, 3:00 - 6:00 p.m.; Sunday, 4:00 - 5:30 p.m. Tutorial for non-English speakers Wednesday, 12:00 - 3:00 p.m.

FEES AND RESTRICTIONS
Drop in hours are free for members and $5 per visit for the general public. Membership is $25. Call for times and rates for computer classes.

46

**Cambridge Employment Program**
51 Inman Street
Cambridge, MA 02139
www.ci.cambridge.ma.us/~DHSP/cep.html
617-349-6166

COMPUTER SERVICES
Internet access for job search
Computers for resume and cover letter writing

FEES AND RESTRICTIONS
Free to Cambridge residents actively job seeking and enrolled in the program

**Cambridge Housing Authority Computer Classes**
Jefferson Park Computer Center
5A Jefferson Park
Cambridge, MA 02140
617-497-4411
and
119 Windsor Street
Cambridge, MA 02139
617-499-7011
1-800-545-1833 x122 TTY

COMPUTER SERVICES
CHA Computer Centers provide basic computer education classes.

FEES AND RESTRICTIONS
CHA residents and Section 8 tenants only

47



To Residents and Colleagues,

The Office of Workforce Development is pleased to present the eighth edition of Cambridge Works and Learns. The directory includes descriptions of organizations which offer programs in job training, job placement assistance, education, and computer services for both youth and adult residents of Cambridge.

We intend the directory to be used by residents, agency and business personnel as an information, referral and networking resource. As part of the Office of Workforce Development's continued efforts to coordinate access to and delivery of employment services in Cambridge, we hope the directory will guide the selection of education and employment services for individuals and inspire collaborations between programs.

For more information about the initiatives of our office, please contact us at 617-349-6234 or visit our website at www.cambridgema.gov/DHSP2/owd.cfm. We welcome your input and wish you luck with your education or career-related efforts.

Sincerely,

*Sue Walsh*

Sue Walsh, Director
Office of Workforce Development

*June, 2004*

1

**Chief Care Resource Center**
ABC Community Room
130 Bishop Allen Drive
Cambridge, MA 02139
www.cccrinc.org
617-547-1063 x271

**COMPUTER SERVICES**
Drop-in computer lab for members of the community. Internet access, Microsoft Office, desktop publishing. Monthly computer classes, call for calendar.

**FEES AND RESTRICTIONS**
Free to residents of Cambridge and neighboring communities. $20 fee for OCTS credit hours.

**Fitzgerald Community School**
70 Ridge Avenue
Cambridge, MA 02140
617-349-6302
CarolynRodriguez@yahoo.com

**COMPUTER SERVICES**
Computer lab available to community programs

**FEES AND RESTRICTIONS**
Must request use of the space after school



# Table of Contents

## Youth Programs

City Links ........................................................... 5
Cooperative Education at RSTA ................................. 6
Just A Start
   Cambridge TeenWork ........................................ 7
   Career Connection ............................................ 8
   Summer Youth Enrichment Program ...................... 9
   YouthBuild .................................................... 10
Office of Special Education .................................... 11
Office of Workforce Development
   Cambridge Neighborhood Service Project ............... 12
   Mayor's Summer Youth Employment Program ......... 13
   Youth Employment Center .................................. 14
Work Force Youth Program ................................... 15

## Adult Programs

### Job Placement Assistance

Cambridge Employment Program ............................ 17
Career Source ................................................... 18
Community Enterprises - Boston, Inc ...................... 19
DTA Employment Services Program ....................... 20
Ethiopian Community Mutual Assistance Assoc ......... 21
Foster Grandparents Program ................................ 22
Massachusetts Rehabilitation Commission ................ 23
North Charles Community Career Links .................... 24
Somerville/Cambridge Elder Services ...................... 25
Vinfen Corporation ............................................ 26

## Adult Programs
(continued)

### Job Training and Certificate Programs

CASCAP Consumer Provider Program ..................... 28
Just A Start
   BASICS ........................................................ 29
   Cambridge Biomedical Careers Program ................. 30
   YouthBuild ..................................................... 31
Medical Interpreter Program ................................. 32
Year Up ........................................................... 33

### Adult Learning

Bunker Hill Community College - Cambridge Satellite ... 35
CHA Gateways Program ...................................... 36
Centro Presente, Inc. ......................................... 37
Community Learning Center ................................. 38
   Bridge Program ............................................... 39
   Even Start Program .......................................... 40
   Project LIFT ................................................... 41
Concilio Hispano de Cambridge, Inc. ..................... 42
The Literacy Project ........................................... 43
Massachusetts Alliance of Portuguese Speakers ......... 44

### Computers in the Community

An overview of locations that provide computer access to
the public.  ...................................................... 45